No. 13-3159

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
     Plaintiff/Appellant,


v.


CRST VAN EXPEDITED, INC.,
     Defendant/Appellee.

_____

On Appeal from the United States District Court
for the Northern District of Iowa

_____

BRIEF OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION AS APPELLANT

_____

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

CAROLYN L. WHEELER
Assistant General Counsel

SUSAN R. OXFORD
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4791
susan.oxford@eeoc.gov

## SUMMARY OF THE CASE

EEOC appeals the imposition of almost $5 million in attorneys' fees and costs following the parties' settlement of this Title VII lawsuit for $50,000. EEOC sued CRST asserting one claim—that CRST failed to prevent and remedy sexual harassment of women by their long-haul driving partners or trainers. EEOC identified claimants during discovery, and the court found 67 women alleged actionable harassment. The court nevertheless dismissed EEOC's lawsuit for failure to satisfy the court's unprecedented view of Title VII's presuit requirements and awarded fees to CRST. This Court reversed on the merits of two EEOC claimants and vacated the fee award without prejudice because CRST was no longer a prevailing party. On remand, the district court reimposed fees despite CRST's agreement to pay $50,000 to one of EEOC's claimants. The court ruled that EEOC's lawsuit consisted of 154 separate claims and that CRST was the prevailing party on 153 claims, all of which the court found "unreasonable or groundless." EEOC believes oral argument of 30 minutes per side will assist this Court in understanding why the court erred.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................................iv

STATEMENT OF JURISDICTION ......................................................................1

STATEMENT OF THE ISSUES ...........................................................................1

STATEMENT OF THE CASE................................................................................1

   A.  Course of Proceedings ...........................................................................1

   B.  Statement of Facts ...................................................................................7

      1.   CRST's Business Model ...................................................................7

      2.   EEOC's Administrative Process..........................................................9

      3.   Complaints of sexual harassment to CRST in and after 2005.........14

   C.  Decision Awarding Fees.........................................................................27

STANDARD OF REVIEW ..................................................................................27

SUMMARY OF ARGUMENT.............................................................................28

ARGUMENT.........................................................................................................33

I.   The District Court Erred as a Matter of Law in Awarding CRST Fees and Costs because CRST Is Not a Prevailing Party under Title VII. ......33

Appellate Case: 13-3159   Page: 3   Date Filed: 01/16/2014 Entry ID: 4114811

A. EEOC is the prevailing party because it obtained a favorable ruling on one issue on appeal and relief for one of its claimants in a suit alleging only one claim for relief...............................................33

B. The court's ruling that EEOC failed to satisfy Title VII's presuit requirements was not a ruling on the merits and, therefore, CRST is not a prevailing party with respect to that ruling. ...............................48

II. CRST is Not Entitled to Fees Because EEOC's Lawsuit Was Not Frivolous, Unreasonable, or Without Foundation.....................................58

A. EEOC reasonably believed it satisfied Title VII's presuit requirements.................................................................................61

B. EEOC's attempt to litigate this case using a pattern-or-practice method of proof was not frivolous or unreasonable and the same evidence was relevant to EEOC's non-frivolous claim for relief for individual women. .......................................................................77

C. EEOC had a non-frivolous basis for believing the women it identified as claimants in this lawsuit experienced actionable harassment. .......87

D. EEOC had a non-frivolous basis for arguing CRST was liable for the harassment of trainees and co-drivers.....................................98

E. The district court erred as a matter of law and abused its discretion in awarding CRST its fees on appeal........................................107

CONCLUSION .................................................................................113

CERTIFICATE OF COMPLIANCE ..................................................115

CERTIFICATE OF SERVICE

Appellate Case: 13-3159    Page: 4    Date Filed: 01/16/2014 Entry ID: 4114811

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ........................................50

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................54

*Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831
(D.C. Cir. 2001) ...................................................................................54

*Breeding v. Arthur J. Gallagher*, 164 F.3d 1151 (8th Cir. 1999)...........................94

*Brenneman v. Famous Dave's of Am.*, 507 F.3d 1139 (8th Cir. 2007) ................94

*Bugg v. Int'l Union of Allied Indus. Wkrs. of Am., Local 507*, 674 F.2d 595
(7th Cir. 1982)...................................................................................109

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)...................................87, 99

*Carter v. Chrysler Corp.*, 173 F.3d 693 (8th Cir. 1999) ........................................92

*Catlett v. Mo. Highway & Transp. Com'n*, 828 F.2d 1260 (8th Cir. 1987) .........81

*Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847 (8th Cir. 2005)...............100

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ...................... passim

*Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940 (8th Cir. 1994) ...........57

*Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp. 2d 1237
(M.D. Ala. 2001)...................................................................................65

*EEOC v. Agro Distrib.*, 555 F.3d 462 (5th Cir. 2009) .........................................76

*EEOC v. Am. Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981) ....................................66

*EEOC v. Bruno's Restaurant*, 13 F.3d 285 (9th Cir. 1993) ........................1, 61, 77

*EEOC v. Carrols Corp.*, 2005 WL 928634 (N.D.N.Y. Apr. 20, 2005)................83

Appellate Case: 13-3159    Page: 5    Date Filed: 01/16/2014 Entry ID: 4114811

*EEOC v. Caterpillar, Inc.*, 409 F.3d 831 (7th Cir. 2005) ..........................54, 66, 69

*EEOC v. Christiansburg Garment Co.*, 1975 WL 317 (W.D. Va. 1975)..............59

*EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012) ............ passim

*EEOC v. Crye-Leike, Inc.*, 800 F. Supp. 2d 1009 (E.D. Ark. 2011) ....................56

*EEOC v. Delight Wholesale Co.*, 973 F.2d 664 (8th Cir. 1992) ......................63, 71

*EEOC v. Dial Corp.*, 259 F. Supp. 2d 710 (N.D. Ill. 2003)...................................83

*EEOC v. Die Fliedermaus*, 77 F. Supp. 2d 460 (S.D.N.Y. 1999) .........................56

*EEOC v. Dillard's, Inc.*, 2011 WL 2784516 (S.D. Cal. July 14, 2011),
    *reconsid. denied*, 2012 WL 440887 (S.D. Cal. Feb. 9, 2012)............................74

*EEOC v. Evans Fruit Co., Inc.*, 872 F. Supp. 2d 1107 (E.D. Wash. 2012) .........56

*EEOC v. Global Horizons*, No. 11-3045, 2013 WL 3940674
    (E.D. Wash. July 31, 2013) ..................................................................................39

*EEOC v. J.B. Hunt Transp., Inc.*, 75 Fed. App'x 853 (2d Cir. 2003).................62

*EEOC v. Jillian's of Indianapolis, Inc.*, 279 F. Supp. 2d 974
    (S.D. Ind. 2003)....................................................................................................74

*EEOC v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984)..................................65

*EEOC v. Kenneth Balk & Assocs.*, 813 F.2d 197 (8th Cir. 1987) .............59, 60, 61

*EEOC v. Klingler Elec. Corp.*, 636 F.2d 104 (5th Cir. 1981) (per curiam).........55

*EEOC v. L.B. Foster Co.*, 123 F.3d 746 (3d Cir. 1997) ...................................67, 77

*EEOC v. Mach Mining, LLC*, --- F.3d ---, 2013 WL 6698515
    (7th Cir. Dec. 20, 2013)............................................................................... passim

*EEOC v. Maricopa Cnty.*, 339 Fed. App'x 688 (9th Cir. 2009) ..........................62

v

*EEOC v. McGee Bros. Co.*, 2011 WL 1542148 (W.D.N.C. Apr. 21, 2011).........56

*EEOC v. Mitsubishi Motor Mfg. of Am.*, 990 F. Supp. 1059
    (C.D. Ill. 1998) .........................................................................................83

*EEOC v. Multilink, Inc.*, Civ. No. 11-cv-2071, 2013 WL 980434
    (N.D. Ohio Mar. 12, 2013) ...............................................................68

*EEOC v. Pierce Packing Co.*, 669 F.2d 605 (9th Cir. 1982)..................76

*EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16 (3d Cir. 1989)...................65

*EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117
    (D. Nev. 2007) ....................................................................................70

*EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245 (M.D. Ala. 1980) ...............56

*EEOC v. Sears, Roebuck & Co.*, Civ. No. 79-cv-5708, 1980 WL 180
    (S.D.N.Y. June 16, 1980)...................................................................57

*EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005 (D. Ariz. 2013) .....56, 70

*EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987 (8th Cir. 2006) ..............77, 85

*EEOC v. United Parcel Serv.*, 860 F.2d 372 (10th Cir. 1988) ..............66

*EEOC v. United Parcel Serv.*, 94 F.3d 314 (7th Cir. 1996) ..................65

*Erickson v. Wis. Dep't of Corrs.*, 469 F.3d 600 (7th Cir. 2006) ..........106

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).....................99, 100

*Farrar v. Hobby*, 506 U.S. 103 (1992)............................................. passim

*Fox v. Vice*, 131 S. Ct. 2205 (2011).......................................37, 42, 43, 85

*General Telephone Co. v. EEOC*, 446 U.S. 318 (1980) ....................38, 73

*Georator Corp. v. EEOC*, 592 F.2d 765 (4th Cir. 1979).........................54

vi

*Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010 (8th Cir. 1988)................................95

*Hathaway v. Runyon*, 132 F.3d 1214 (8th Cir. 1997).....................................92, 96

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)..................................................41, 42, 44

*Holcombe v. U.S. Airways, Inc.*, 369 Fed. App'x 424 (4th Cir. 2010) ...............52

*Howard v. Burns Bros.*, 149 F.3d 835 (8th Cir. 1998) ...........................................94

*Hughes v. Rowe*, 449 U.S. 5 (1980) .......................................................................80

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ...............................78

*Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287 (8th Cir. 1997).............................82

*Kline v. City of Kansas City*, 175 F.3d 660 (8th Cir. 1999) ...................................95

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)............................................38

*Little Rock Sch. Dist. v. Arkansas*, 127 F.3d 693 (8th Cir. 1997) ...............107, 108

*Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752
    (8th Cir. 2008)..................................................................................................45

*Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*,
    26 F.3d 842 (8th Cir. 1994)................................................................... passim

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004)............................106

*McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739 (8th Cir. 1996)
    (per curiam) ..................................................................................51, 52, 53

*Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)........................................87

*Merritt v. Albermarle Corp.*, 496 F.3d 880 (8th Cir. 2007) .................................101

*Middleton v. Remington Arms Co.*, 594 F.2d 1210 (8th Cir. 1979) ...................108

*Moring v. Ark. Dep't of Corr.*, 243 F.3d 452 (8th Cir. 2001)................................93

vii

*Nieto v. L&H Packing Co.*, 108 F.3d 621 (5th Cir. 1997) .....................................71

*Obin v. Dist. No. 9, Int'l Ass'n of Machinists,* 651 F.2d 574
    (8th Cir. 1981) ..............................................................................79, 85

*Polacco v. Curators of Univ. of Mo.*, 37 F.3d 366 (8th Cir. 1994) .......................45

*Rester v. Stephens Media, LLC*, --- F.3d ---, 2014 WL 103968
    (8th Cir. Jan. 13, 2014) ...............................................................52, 53

*Robinson v. Monsanto Co.*, 758 F.2d 331 (8th Cir. 1985) ....................................59

*Sanchez v. Northwest Airlines, Inc.*, 659 F.3d 671 (8th Cir. 2011) .....................52

*Sandoval v. Am. Bldg. Maintenance Indus.*, 578 F.3d 787
    (8th Cir. 2009) ........................................................................105, 106

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) .......................57

*Serrano v. Cintas*, 699 F.3d 884 (6th Cir. 2012), *cert. denied sub nom.*
    *Cintas Corp. v. EEOC*, 134 S. Ct. 92 (2013) .....................................68

*Smith v. St. Louis Univ.*, 109 F.3d 1261 (8th Cir. 1997) .....................................95

*St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of*
    *St. Louis*, 96 F.3d 323 (8th Cir. 1996) ...............................................28

*Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024 (8th Cir. 2008) ...................28

*United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) ..............................66

*Unt v. Aerospace Corp.*, 765 F.2d 1440 (9th Cir. 1985) .....................................111

*Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013) ..............................................102

*Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548 (11th Cir. 1995) .................112

*Wedow v. City of Kansas City*, 442 F.3d 661 (8th Cir. 2006) ..............................95

*Williams v. City of Carl Junction, Mo.*, 523 F.3d 841 (8th Cir. 2008) ................59

Appellate Case: 13-3159    Page: 9    Date Filed: 01/16/2014 Entry ID: 4114811

*Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987) ....................................................110

## STATUTES

28 U.S.C. § 1291......................................................................................1

28 U.S.C. § 1331......................................................................................1

28 U.S.C. § 1920.............................................................................1, 7, 35

42 U.S.C. § 1988.........................................................................33, 60, 107

42 U.S.C. § 2000e-5 ................................................................................1

42 U.S.C. § 2000e-5(b) ...............................................................51, 53, 71, 72

42 U.S.C. § 2000e-5(e)(1) ..........................................................................51

42 U.S.C. § 2000e-5(f)(1).......................................................................51, 53

42 U.S.C. § 2000e-5(k) ...................................................................... passim

Title VII ........................................................................................ passim

## RULES & REGULATIONS

Fed. R. Civ. P. 8(a)(2) ..............................................................................54

Fed. R. Civ. P. 9(c) ..................................................................................55

Fed. R. Civ. P. 26......................................................................................2

Fed. R. Civ. P. 54(d)(1)..........................................................................1, 35

Local Rule 47C ...............................................................................107, 108

## OTHER AUTHORITIES

Black's Law Dictionary.............................................................................38

Appellate Case: 13-3159    Page: 10    Date Filed: 01/16/2014 Entry ID: 4114811

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this Title VII lawsuit under 28 U.S.C. § 1331. The court dismissed the case with prejudice based on the parties' settlement and entered final judgment on February 8, 2013. R.380, 381. On August 1, 2013, the court granted CRST attorneys' fees and costs. R.400. EEOC filed a timely notice of appeal on September 28, 2013. R.402. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in imposing attorneys' fees and costs because CRST is not the prevailing party.

Apposite statutes and cases:

42 U.S.C. § 2000e-5(k)

28 U.S.C. § 1920

Fed. R. Civ. P. 54(d)(1)

*Farrar v. Hobby*, 506 U.S. 103 (1992)

*Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*,
26 F.3d 842 (8th Cir. 1994)

2. Whether the district court abused its discretion in imposing fees because EEOC's lawsuit was not frivolous, unreasonable, or without foundation.

Apposite statutes and cases:

42 U.S.C. § 2000e-5(k)

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)

*Marquart*, 26 F.3d 842 (8th Cir. 1994)

*EEOC v. Bruno's Restaurant*, 13 F.3d 285 (9th Cir. 1993)

## STATEMENT OF THE CASE

### A. Course of Proceedings

EEOC sued CRST under section 706 of Title VII, 42 U.S.C. § 2000e-5. Appendix Volume I (I-Apx.) at 40. EEOC's complaint alleged that since at least July 2005, CRST failed to protect Monika Starke and "a class of similarly situated female employees" from workplace sexual harassment by failing to prevent and remedy the hostile work environment caused by lead drivers (trainers) or co-drivers. *Id.* EEOC sought monetary and injunctive relief for "Starke and the class of similarly situated female

employees." I-Apx.43. The parties began discovery, and EEOC began identifying the women on whose behalf EEOC sought relief. In August 2008, the court established a deadline of October 15, 2008, for EEOC to identify its claimants. I-Apx.53-54.

CRST's Amended Answer asserted several affirmative defenses, but did not assert that EEOC failed to satisfy Title VII's presuit requirements before filing suit. I-Apx.49. CRST did allege, as an affirmative defense, that it "took reasonable care to prevent and correct unlawful harassment" and that Starke and other female employees "failed to take advantage of corrective opportunities." *Id.* (¶1). Despite this express reliance on its existing harassment complaint and response procedures as a defense to EEOC's lawsuit, CRST did not disclose any of the business records that support this defense in its initial disclosures under Federal Rule of Civil Procedure 26. *See* IV-Apx.1146-52. Without these records, by mid-August 2008, EEOC had identified 49 claimants. Addendum (A)-11.

EEOC first learned of these records when CRST provided copies to EEOC on September 29, 2008—two weeks before EEOC's deadline for

2

identifying claimants. III-Apx.756. Until this belated disclosure, EEOC was unaware of the number of sexual harassment complaints CRST had documented from its female drivers since January 2005. CRST's disclosure was even more surprising because EEOC had requested this information during its administrative investigation of Starke's discrimination charge. VI-Apx.1636-40.

Largely as a result of the internal harassment complaint documents CRST provided EEOC on September 29, 2008, EEOC identified a total of 270 potential claimants by the court's October 15, 2008, deadline. I-Apx.63; A-11-13. The court barred EEOC from seeking relief for any women not deposed, I-Apx.63, and by the end of discovery, 154 women had been deposed. A-13.

On the deadline for filing dispositive motions, CRST filed seven separate motions for summary judgment. It sought dismissal of EEOC's "pattern-or-practice claim," R.150, and argued, *inter alia*, that judicial estoppel barred EEOC from seeking relief for any woman who did not list her claim against CRST in her bankruptcy petition; that CRST trainers are

3

not "supervisors,"; and, for various women, that the harassment they alleged was untimely or not sufficiently severe, or CRST had no notice or responded effectively. *See* R.144–R.149. CRST did not move for summary judgment with respect to 32 women identified by EEOC as potential claimants. IV-Apx.1026-77. None of CRST's dispositive motions challenged EEOC's satisfaction of Title VII's presuit requirements. *See* A-5 n.2.

On April 30, 2009, the court issued its ruling that EEOC's evidence did not establish a "pattern-or-practice" of discrimination, A-1, the first of several decisions granting CRST partial summary judgment. The court observed in a footnote that CRST had not complained that EEOC "failed to conciliate the allegations of Ms. Starke or anyone else." A-5 n.2. Although the deadline for filing dispositive motions had long passed, CRST promptly sought an order to show cause to challenge the adequacy of EEOC's presuit efforts. *See* R.222 (motion filed 5/11/09).

In a series of decisions, the court thereafter held that "lead drivers" are not supervisors of trainees, A-60-61; that judicial estoppel prevented

4

EEOC from seeking relief for some women, A-94-108; and that EEOC failed to allege actionable harassment with respect to others. *See* A-109-184. The court dismissed EEOC's claim on behalf of the remaining sixty-seven women on the ground that, before filing suit, EEOC did not satisfy Title VII's presuit requirements. A-185-224. The court awarded CRST $92,842.21 in costs and $4,467,442.90 in attorneys' fees under Title VII's fee-shifting provision. A-265. In finding EEOC's lawsuit was unreasonable, the court relied entirely on its ruling that EEOC had failed to satisfying Title VII's presuit requirements. A-239-242, 265. CRST did not contend, and the court made no finding, that EEOC's lawsuit was unreasonable in any other respect.

EEOC appealed both the dismissal and the imposition of fees. XVII-Apx.4730-31. This Court reversed the district court's ruling that judicial estoppel prevented EEOC from seeking relief for women who failed to declare their claim against CRST in bankruptcy proceedings. A-277-281. Consequently, this Court remanded EEOC's claim for relief for Starke. A-281. The Court also reversed the district court's ruling that EEOC

claimant Tillie Jones did not experience sufficiently severe harassment. A-285-286.

With one panel member dissenting, this Court affirmed the lower court's rulings that lead drivers are not supervisors of their trainees and that EEOC could not seek relief for 67 women with potentially-meritorious allegations of harassment because EEOC had not satisfied Title VII's presuit requirements. A-273-277; A-282-283; A-290-293. This Court affirmed the district court's remaining individual rulings on the elements of actionable harassment. A-283-290.

Despite affirming the district court with respect to most of EEOC's claimants, this Court vacated, without prejudice, the lower court's award of fees to CRST. A-290. This Court explained that, in light of the Court's "reversals of a couple of the district court's summary-judgment orders, CRST is no longer a 'prevailing' defendant." *Id.*

On remand, EEOC notified the district court that it no longer sought relief for Jones, and CRST agreed to pay $50,000 to EEOC (for Starke) to settle the EEOC's lawsuit. *See* A-335-339. The court entered a dismissal

6

order expressly incorporating, by reference, the parties' settlement agreement. A-335. CRST moved for attorneys' fees and costs, asserting that its litigation team, collectively, spent over 20,000 hours on the lawsuit and appeal. XVII-Apx.4732-36. The court granted CRST's application and ordered EEOC to pay costs of $91,758.46 pursuant to 28 U.S.C. § 1920 and attorneys' fees of $4,189,296.10 along with out-of-pocket expenses of $413,387.58 pursuant to Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k). A-294-333.

## B. Statement of Facts[1]

### 1. CRST's Business Model

CRST employs long-haul drivers for its coast-to-coast transportation business. A-35. Driver teams (co-drivers) travel cross-country for weeks at a time, alternately driving and sleeping in the double-sleeper cab. *Id.* The "workplace" for these drivers is, thus, isolated from CRST supervisors, co-workers, and CRST's safety and human resources officials in Cedar Rapids, Iowa. While on the road, drivers maintain contact with CRST dispatchers

---

[1] Because this case was decided on summary judgment, the EEOC presents its version of the facts as supported by the summary judgment record.

7

through the truck's satellite communication device (Qualcomm). A-44. If a driver lost her personal cell phone or charger, or if her cell phone battery ran down, the Qualcomm might be her only way to contact the company or anyone outside the truck.

New drivers receive a three-day classroom orientation followed by four weeks of over-the-road training with an experienced "lead driver" (trainer). IV-Apx.1214. CRST gives trainers a manual instructing what to cover during each week of over-the-road training. IV-Apx.1202-39. For example, CRST does not ensure trainees know how to use the Qualcomm when they begin their over-the-road training. Rather, the CRST manual instructs trainers to teach Qualcomm use in the second week of over-the-road training. IV-Apx.1220-24.

CRST Human Resources (HR) Director James Barnes described the lead driver/student driver relationship to EEOC as "really no different than the role of supervisors in other industries and organizations." V-Apx.1259; IV-Apx.1189-92. CRST's instruction manual for trainers states that, during the twenty-eight days of over-the-road training, they are the "captain of the

8

ship." IV-Apx.1245, 1258. In fact, trainers have the ability to control virtually every aspect of a trainee's activities on the truck including when she is allowed to use Qualcomm (and whether she even received training on its use), and when a trainee drives and, thus, whether she obtains the driving experiences needed to graduate from "trainee" to "co-driver." IV-Apx.1190, 1204-05. Trainers also had the ability to control when and whether to stop to eat, use a bathroom, or take a shower.

Throughout the training period, trainers evaluate trainees and, at the end, give the trainee "a pass/fail driving evaluation" that substantially determines whether the trainee achieves full-driver status, which results in an immediate increase in pay. IV-Apx.1190-91, 1237-38; A-36. A trainer's "passing" evaluation is generally accepted by CRST management without further review, resulting in a trainee's promotion to "co-driver" status. XVII-Apx.4726.

### 2. EEOC's Administrative Process

EEOC based its lawsuit on a charge filed by Monika Starke in December 2005 alleging two male trainers sexually harassed her during

Appellate Case: 13-3159    Page: 20    Date Filed: 01/16/2014 Entry ID: 4114811

over-the-road training. VI-Apx.1634-35. While investigating Starke's charge, EEOC learned that other women, besides Starke, had been affected by CRST's failure to prevent and remedy sexual harassment during over-the-road training and driving. EEOC did not know just how many women had been affected, however, because CRST gave EEOC inaccurate information during the investigation.

Specifically, EEOC asked CRST whether CRST had received any other sexual harassment complaints between January 2 and November 2, 2005, and, if so, how CRST had responded. VI-Apx.1636, 1638. CRST gave EEOC the names of two women: Lori Essig, who complained to CRST about harassment by a different trainer in July 2005, and Tamara Thiel, who complained of co-driver harassment in August 2005. VI-Apx.1640. HR Director Barnes later admitted under oath that CRST had received "many more than two" complaints, XVII-Apx.4579-80, and CRST's business records show HR recorded *forty-three* sexual harassment complaints from female trainees and co-drivers between January 2 and November 2, 2005, and another eleven complaints between November 2

10

and December 21, 2005 (the date CRST submitted its response to EEOC).[2]
*See* A-346.

Barnes admitted that between January and December 2005, he and his assistant received and documented these complaints on the Positive Work Environment (PWE) chart.  XVII-Apx.4555-57; *see* A-346-48.  Barnes could not explain why he told EEOC's investigator that CRST had received only two other complaints besides Starke's between January 2 and November 2, 2005, when his office had recorded forty-three.  XVII-Apx.4579-80.  Because CRST failed to mention these complaints in response to EEOC's administrative inquiry, however, EEOC did not learn of them until discovery.

EEOC continued its administrative investigation throughout 2006.  Based on information gathered, EEOC investigator Pamela Bloomer told Barnes in January 2007 that it appeared CRST had a problem with

---

[2]  EEOC learned during litigation that eighteen more women complained to CRST about sexual harassment during 2005, but CRST had not recorded their complaints.  *E.g.*, VII-Apx.2012-16(Blauvelt); X-Apx.2821-32(Hindes); X-Apx.2847-56(Holmes);       XI-Apx.2975-81(Jones);       XI-Apx.3019-22(Lesmeister); XII-Apx.3242-48(Noernberg); XV-Apx.4315-24(Villareal).

11

harassment of its female trainees during over-the-road training, but Barnes assured Bloomer that the number of sexual harassment complaints from trainees since December 2005 was "quite minimal."  V-Apx.1259.  On July 12, 2007, EEOC issued its determination of "reasonable cause to believe that [CRST] has subjected [Starke and] a class of employees and prospective employees to sexual harassment, in violation of Title VII."  VI-Apx.1629-30.

EEOC initiated conciliation, and CRST expressed interest.  VI-Apx.1631.  Bloomer outlined for CRST attorney Thomas Wolle EEOC's two-part conciliation proposal:  appointment of a monitor to examine CRST's workplace "to discover and eliminate sexual harassment" and "relief for the class."  VI-Apx.1618.  Wolle inquired about the class.  *Id.* Since EEOC did not then know the number or identities of all affected women (CRST had disclosed only a few names when EEOC asked during the investigation), Bloomer explained that EEOC would ask CRST to send a letter to past and present female drivers to help identify aggrieved individuals.  *Id.*  CRST agreed to consider EEOC's proposal.  *Id.*

Appellate Case: 13-3159     Page: 23     Date Filed: 01/16/2014 Entry ID: 4114811

On August 24, 2007, Wolle informed Bloomer that, having spoken to Starke's private counsel, "it did not appear conciliation would be successful," and EEOC's investigator explained that the next step would be EEOC's decision whether to pursue litigation. *Id.* On August 27, Wolle sent a confirming email to Bloomer explaining that, "in light of the monetary demand made by Ms. Starke's attorney, . . . CRST does not wish to engage in conciliation efforts because we are confident that conciliation will not result in a resolution of this matter." VI-Apx.1620. CRST's counsel expressed no dissatisfaction with any element of EEOC's conciliation proposal or conciliation process. VI-Apx.1617-20. As discovery later revealed, CRST knew at this point that at least 105 women had complained to CRST about sexual harassment by trainers or co-drivers since the beginning of 2005 and that women were continuing to complain to the company about harassment at a rate of approximately one complaint per week. *See* A-346-48; IV-Apx.1135-36.

13

### 3.  Complaints of sexual harassment to CRST

The dozens of women who reported sexual harassment to CRST between January 2005 and October 15, 2008, *see* IV-Apx.1077-81, complained of similar forms of harassment during their long-haul assignments.  They reported their trainers or co-drivers:  propositioned them for sex, IV-Apx.1090-95; sexually assaulted them or threatened them with sexual assault, IV-Apx.1084-87; or subjected them to other forms of offensive sex-based touching, IV-Apx.1087-90.  At least a dozen women in 2005, alone, complained to CRST that their trainer or co-driver exposed his penis or urinated or masturbated in their presence.  *See* IV-Apx.1082-84.[3]  Others complained that their co-driver or trainer exposed them to pornography or graphic sex talk while on the road.  IV-Apx.1097-98.

Women reported physical assaults by their trainer or co-driver.  One, Ramona Villareal, complained twice to CRST that her trainer had beaten her "black and blue" for driving mistakes.  CRST did not remove her from the truck until after her second complaint of assault.  XV-Apx.4318-22.

---

[3]  *See, e.g.*, IX-Apx.2337-38(Desonier); X-Apx.2813-34(High).

Appellate Case: 13-3159    Page: 25    Date Filed: 01/16/2014 Entry ID: 4114811

Dozens of women complained to CRST that a male trainer or co-driver had threatened to abandon them in a distant location or had parked in an isolated area where assistance would be unavailable if the trainer/co-driver followed through on his threats of assault. IV-Apx.1095-97.[4]  For example, Tequila Jackson called CRST from Florida one Friday evening to report her trainer was physically threatening her.  The dispatcher told her nothing could be done until Monday morning.  She then called her sister in another state, who called 911.  As her trainer had warned, however, the police could not find Jackson in the isolated location where her trainer had parked their truck.  After a terrifying weekend, CRST finally sent two CRST drivers on Monday morning to bring Jackson home.  XI-Apx.2956-62.

Between January 2005 and October 15, 2008, female trainees and co-drivers continued to report similar forms of harassment to CRST at an average rate of one harassment complaint per week.  IV-Apx.1136; XVII-Apx.4563 (Barnes received three to five complaints per month).  These complaints reflected the same general forms of harassment:  sexually

---

[4]  *See, e.g.*, XIII-Apx.3624(Ross); XV-Apx.4318-22(Villareal).

Appellate Case: 13-3159     Page: 26     Date Filed: 01/16/2014 Entry ID: 4114811

provocative language and propositions, verbally abusive and demeaning treatment, masturbation and urination in front of women despite their express objection, threats that women would be abandoned in isolated places far from their homes or a CRST depot, physical and sexual assault, and, in some instances, rape. *See* A-48.

### 4. CRST's Implementation of its Anti-Harassment Policy

CRST prohibits workplace sexual harassment. The company's driver handbook, which CRST distributes to new drivers during their orientation class, contains CRST's anti-harassment policy, and it is presented during new driver orientation. IV-Apx.1197-2000; XVII-Apx.4594. Some women reported that trainers and participants made light of sexual harassment during the orientation, discussed the anti-harassment policy jokingly, or ignored the presentation.

Apart from this general prohibition against harassment, CRST did not implement its harassment policy effectively. *See* IV-Apx.997-1000. The Lead Driver Coordinator did not screen prospective trainers for harassment violations, IV-Apx.997, and the company did not instruct its

16

drivers to refrain from certain types of conduct not specifically mentioned in CRST's written policy, even though CRST, as noted above, received recurring complaints that certain types of conduct were recurring. CRST never explained to its drivers that such conduct can constitute harassment, even if not explicitly sexual in nature. *See generally* IV-Apx.4554-88. After providing new-driver orientation, CRST provided no subsequent anti-harassment training for its drivers. A-41. CRST had regular driver meetings, XVII-Apx.4652, including regular "events where we go out to the field to meet with drivers at our terminals." XVII-Apx.4650; *e.g.*, XIII-Apx.3631. CRST offered no evidence, however, that it ever used these occasions to reinforce its anti-harassment policy, to identify specific types of prohibited conduct, or to address complaints of recurring types of harassment. *See generally* XVII-Apx.4565-4600, 4650.

The Qualcomm CRST provided on each truck, which allowed drivers to communicate directly with dispatchers while on the road, was "prone to system shut-downs" and temporary malfunctionings. IV-Apx.1191; A-44. Although trainers were supposed to teach Qualcomm use during week two

of the over-the-road training, some never did.[5]   Other trainees feared using the Qualcomm because they knew the trail of messages could be read in the truck, even after transmission, and they feared the consequences if their trainer discovered their complaint.[6]  A-44.

CRST's driver handbook instructs that employees subjected to harassment "should immediately report such conduct to [their] . . . Immediate Supervisor" or the Director of Human Resources (HR).  IV-Apx.1200.  CRST instructs its dispatchers, known as "fleet managers," that when a female driver asks to be removed from a harassing situation, they should not try to resolve the complaint on their own, but simply re-assign the driver to a new lead or co-driver, but some dispatchers failed to handle harassment complaints pursuant to these instructions.  IV-Apx.998-1000.  CRST admitted that dispatchers told at least twenty-five women who complained of harassment to continue on the truck with their harasser.  V-Apx.1563-68.

---

[5]   *See, e.g.*, VII-Apx.1887(Beaton); VIII-Apx.2180(Chisholm); XI-Apx.3037-38(Mason); XVI-Apx.4529-31(Ybarra).

[6]   *See, e.g.*, VIII-Apx.2079(Brown); X-Apx.2895(Hughes).

18

Sometimes CRST's response—separating a woman from her harasser—left her worse off. A-157-160. When CRST removed a woman from a harasser's truck, she was not paid while waiting for a new trainer or co-driver. Sometimes she was forced to pay for her hotel room or bus ticket home. The harasser, on the other hand, was generally free to proceed on with the load, experiencing little or no disruption in pay. A-159 & n.6.

Dispatchers did not always forward complaints promptly to HR, as required under CRST's anti-harassment policy. A-50. CRST's policies provide that a dispatcher who fails to forward harassment allegations to HR may be disciplined, up to and including discharge. CRST admitted, however, that it did not even keep track of driver complaints about dispatcher noncompliance with CRST's anti-harassment policy. A-51; XVII-Apx.4586. Although the district court concluded the record showed at least sixty-seven women—in addition to Monika Starke and Tillie Jones—experienced actionable harassment of which CRST knew or should have known but failed to respond appropriately, CRST officials could not

19

identify any dispatcher who was ever disciplined for mishandling a harassment complaint. A-51.

When a dispatcher forwarded a complaint to CRST's HR Department, EEOC's evidence showed that HR Director Jim Barnes or his assistant, Lisa Oetken, recorded it on a chart entitled the "Positive Work Environment" chart (PWE). XVII-Apx.4600; 4659. Furthermore, Barnes did not share information about harassment complaints with other CRST managers. V-Apx.1577-78. A number of company officials said they had no idea how many, or what kind of, sexual harassment complaints CRST was receiving. V-Apx.1575, 1584. Lead Driver Program Director George Brandmayr, who was responsible for managing CRST's cadre of trainers, said when he screened prospective lead drivers, he considered their driving experience, safety record, and company records of "professionalism," but did not check with HR or check the PWE to see if HR had received any sexual harassment complaints against the driver. XVII-Apx.4610-11.

20

When CRST received a sexual harassment complaint, the company purported to investigate the complaint, but it seldom made any finding whether sexual harassment actually occurred. A-49. This omission conflicted with CRST's own written policy, which indicated that the investigatory findings should govern the discipline imposed.[7] The omission also conflicted with the opinion of CRST's own expert, Dr. Papinchock, who stated that employers should make findings about whether a harassment complaint is true. Dr. Papinchock examined CRST's practices and noted that CRST's primary response to sexual harassment complaints was to separate the parties; the company rarely made any finding as to whether the harassment occurred. V-Apx.1307 (Dr. Campion's analysis of Dr. Papinchock's report).

Barnes's assistant, Oetken, did not think it necessary for CRST to determine whether harassment happened or not, because CRST's response

_____

[7] CRST's policy stated: "[D]epending on the investigation findings and severity of the behavior," discipline may include any combination of "written warning; probation; suspension; termination; in the case of a driver, forfeiture of the ability to drive with and/or train with member of a certain sex."

21

was typically the same regardless:  separate the complainant from the alleged harasser; inform the accused driver that the alleged conduct "could be sexual harassment"; enter the complaint on the PWE; and sometimes—but not always—restrict the accused from driving with other females for a six-month period.  XVII-Apx.4595, 4664-65, 4677.  Giving the alleged harasser a "verbal warning" (vw) was the most common CRST response to a complaint of harassment.  *See* A-346-48.  In response to the hundreds of harassment complaints CRST received from female drivers during the period relevant to this lawsuit, the record provides no indication CRST *ever* issued a written warning, placed a driver on probation, or suspended a driver for sexual harassment.  And CRST almost never terminated a driver for sexual harassment, even though Barnes recognized that as an appropriate response.  XVII-Apx.4561-62.

When Gloria South reported that her harasser had repeatedly raped her, Barnes assured her he would be terminated.  In fact, however, CRST's records show he received only a "verbal warning, no females."  XV-Apx.4063-73.  When trainee Stacy Barager complained to Barnes in July

22

2007 about her trainer's harassment, Barnes responded that "he got 20 or so cases a week, and if he fired everybody," CRST would have "no drivers left." VII-Apx.1810-11, 1828.

Even drivers whose conduct provoked multiple harassment complaints were not immediately discharged. When Jonne Shepler reported that she was quitting because, among other things, trainer John Kewley had "hit on" her, CRST gave Kewley a verbal warning and six-month "no females" designation. XIV-Apx.3785-93; A-347. Eight months later, CRST assigned Kewley to train Bobbi O'Dell. When Kewley harassed her, O'Dell complained to Barnes, but there is no record CRST investigated her complaint or disciplined Kewley. XII-Apx.3261-71.

Two months later, CRST assigned Kewley to drive with Rebecca Shields, and Shields complained to her dispatchers that Kewley harassed her. CRST investigated her complaint, but did not discipline Kewley. A-348. One week after Shields complained, CRST assigned Kewley to train Shannon Alger-Aguirre, and Kewley harassed her. *Id.* Only after this *fourth* complaint—from Alger-Aguirre—did CRST finally terminate

23

Kewley for sexual harassment. *Id*. Notwithstanding the district court found that 67 of EEOC's claimants alleged actionable harassment, a number of whom alleged quite severe forms of harassment, CRST was unable to document termination of anyone other than Kewley for sexually harassing a female trainee or co-driver.

Barnes considered the "no females" designation to be a "form of discipline," although it did not affect a driver's pay or other terms of employment. XVII-Apx.4557. It was not a permanent bar, and a driver could ask to have it lifted after six months. XVII-Apx.4558. During the time period covered by EEOC's lawsuit, CRST imposed a "no females" designation in response to fewer than half the sexual harassment complaints recorded on the PWE. A-346-48. Even in those cases, it was not well-monitored and, as with Kewley, even when it was implemented for the full six months, it did not always prevent a driver from harassing additional women. XVII-Apx.4592-93.

For example, on January 18, 2007, CRST gave Kenneth Carmichael a verbal warning and six-month "no females" restriction after Ellen Marley

24

complained that Carmichael had sexually harassed her. A-347. After less than *five* months, CRST assigned Carmichael to train Carolyn Hunsucker. He then began sexually harassing her, and while she waited for a return call from her dispatcher, Carmichael sexually assaulted her. X-Apx.2904-06.

Similarly, in September 2007, Kimberly Watson told HR as well as her dispatcher and Brandmayr about trainer Leslie Crockett's harassing conduct. XVI-Apx.4432-34. CRST gave Crockett a verbal warning and "no females" designation, A-347, but Watson testified that she watched Crockett leave Brandmayr's office and continue on his route *with a new female trainee* the same day Crockett was "counseled." XVI-Apx.4434.

Throughout EEOC's investigation and this litigation, CRST continued to record harassment complaints at a rate of almost one per week. In addition to the 54 complaints CRST recorded in 2005, CRST recorded 32 in 2006, 49 in 2007, and 47 through October 15, 2008.[8] IV-Apx.1136. Barnes

---

[8] These numbers exclude women who complained to their dispatcher or some other CRST office, but whose complaint went unrecorded.

Appellate Case: 13-3159    Page: 36    Date Filed: 01/16/2014 Entry ID: 4114811

and Oetken believed the fact that many women reported harassment demonstrated CRST's policy "is working." XVII-Apx.4569; 4662; 4676.

Notably, despite this regular stream of harassment complaints, CRST made only a few, minor changes to its anti-harassment practices from 2006 through the close of discovery in October 2008. XVII-Apx.4566; 4661; 4675. CRST converted the driver anti-harassment training from a series of slides into a ten-minute DVD showing an attorney reading the slides aloud; CRST did not change the content or the fact that each driver is trained only once. XVII-Apx.4566-67. CRST also instituted a hotline and added its dispatchers and its "safety, training, [and] recruiting" staff to the categories of non-driver employees who were required to attend annual training on the company's harassment policy. XVII-Apx.4566. One former dispatcher worked at CRST for four months, however, before she received training on CRST's sexual harassment policy. IV-Apx. 1190.

EEOC's summary judgment evidence included the analysis of EEOC's expert, Michael Campion, Ph.D., concerning the frequency with which CRST was receiving harassment complaints by female drivers and

26

the effectiveness of CRST's responses. He concluded that CRST's responses were not effective measures for deterring future harassment. V-Apx.1300-09.

## C. Decision Awarding Fees

On August 1, 2013, the district court awarded CRST $4.69 million in attorneys' fees and costs. The court rejected EEOC's argument that CRST was not a prevailing party under Title VII. A-307-314. The court rejected EEOC's argument that its lawsuit consisted of a single claim on which EEOC prevailed because it obtained relief for Starke. Rather, the court concluded that because the EEOC's complaint sought relief for Starke and other women, "there were at least two claims" and CRST prevailed on all of them other than Starke. A-310-314. The district court then held that these claims other than EEOC's claim for Starke were all "unreasonable or groundless" under *Christiansburg*. A-315-320.

Appellate Case: 13-3159     Page: 38     Date Filed: 01/16/2014 Entry ID: 4114811

## STANDARD OF REVIEW

This Court reviews *de novo* any legal issues related to an award of attorneys' fees and costs under Title VII, *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008), including "the district court's determination of whether a litigant is a prevailing party." *St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis*, 96 F.3d 323, 330 (8th Cir. 1996). This Court will "overturn a fee award where the district court has made an 'error in implementing the governing legal standards.'" *Marquart v. Lodge 837, Int'l Ass'n of Machinists and Aerospace Workers*, 26 F.3d 842, 844 (8th Cir. 1994). Where a district court correctly determined that an award of attorneys' fees was within the court's discretion under Title VII's fee-shifting provision—*i.e.*, that the defendant "was a 'prevailing party' for purposes of Title VII and that the underlying action was 'frivolous, unreasonable, or groundless,'"—this Court reviews the fee award under the abuse of discretion standard. *Id.* at 844-45.

Appellate Case: 13-3159     Page: 39     Date Filed: 01/16/2014 Entry ID: 4114811

## SUMMARY OF ARGUMENT

The district court awarded $4.69 million in fees and costs to CRST based on its unprecedented view of EEOC's presuit obligations and its flawed, hindsight assessment of the merits of EEOC's claim for relief for multiple victims of sexual harassment. In rendering this judgment, the district court ignored the policy reasons for imposing a higher standard for defendants seeking fee awards in employment discrimination cases: to avoid chilling vigorous enforcement of civil rights, prevailing defendants are entitled to fees only when a plaintiff's claims are frivolous.

The court's manifold errors stemmed from its initial mistake in concluding that CRST is the prevailing party where the EEOC obtained a $50,000 settlement for one of its claimants and that settlement was incorporated expressly in the court's order dismissing the case. Moreover, EEOC was able to obtain this relief only by successfully persuaded this Court, in the prior appeal, to reverse the district court's determination that EEOC is judicially stopped from obtaining relief for a claimant who failed to disclose her discrimination claim in bankruptcy proceedings. Obtaining

29

this relief in a court-acknowledged settlement renders EEOC, not CRST, the prevailing party in this action.

The district court ignored the rule that plaintiffs who achieve even minimal success are nonetheless prevailing parties. Instead, it erroneously viewed EEOC's case as 154 separate claims and thought CRST deserved fees for its success on 153 of them. But EEOC had only one claim—that CRST violated Title VII by failing to prevent and remedy sexual harassment of its female trainees and drivers—and EEOC's settlement obtaining relief for one claimant was sufficient to render EEOC the prevailing party. Even if the case is viewed as encompassing multiple claims because of the relief sought for multiple women, those claims for relief are interrelated instances of the one type of Title VII violation EEOC alleged. Under such circumstances, controlling precedent dictates CRST be denied fees.

The district court also erred in ruling that dismissing EEOC's claim based on deficiencies in its presuit processing constituted a ruling on the merits of EEOC's claim. This procedural ruling is not the type of merits-

30

based decision that is an essential predicate for a defendant's entitlement to prevailing party status.

Even if CRST is deemed a partially prevailing party, the district court erred in awarding fees to CRST because EEOC's claim and conduct of this litigation were not frivolous, groundless, or unreasonable. EEOC's belief that it satisfied all administrative steps before filing suit was grounded in overwhelming judicial precedent. Until the decision on the prior appeal no court of appeals had held that EEOC must individually identify and conciliate the relief sought for each claimant before it can seek judicial relief for victims of the violation alleged in its complaint.

Likewise, EEOC reasonably believed that its claim seeking relief for 154 sexual harassment victims should be litigated using a pattern-or-practice framework routinely employed by other courts in class harassment cases. EEOC also reasonably believed that the myriad allegations of abusive treatment and sexual misconduct would suffice to demonstrate severe or pervasive harassment of the women for whom EEOC sought relief, and the district court and this Court in the prior appeal agreed with

31

EEOC that 67-69 women had experienced actionable harassment. EEOC also had a reasonable and legally well-grounded belief that CRST could be found liable for the harassment the women endured, either because the trainers who allegedly perpetrated much of the harassment were functionally supervisors—supporting liability under the strict standard applicable to supervisor harassment—or because CRST was on notice of pervasive complaints of harassment and had not taken effective steps to prevent or remedy it—rendering it liable under the negligence standard applicable in cases of co-worker harassment.

EEOC's decision to appeal the initial dismissal of its case was reasonable, grounded in sound legal precedent, and supported by a reasonable hope of reversal on appeal. Thus, imposition of fees for that appeal are unwarranted. In that appeal, this Court reversed the district court's ruling on judicial estoppel, and the dissent agreed with EEOC's position on the other two major legal issues in the case--the sufficiency of EEOC's presuit conduct and the supervisory status of CRST's trainers— thus, the imposition of fees for that appeal is untenable.

Appellate Case: 13-3159     Page: 43     Date Filed: 01/16/2014 Entry ID: 4114811

# ARGUMENT

## I. The District Court Erred as a Matter of Law in Awarding CRST Fees and Costs because CRST Is Not a Prevailing Party under Title VII.

Title VII allows a district court, in its discretion, to award attorneys' fees to a "prevailing party."  42 U.S.C. § 2000e-5(k).[9]  The district court erred as a matter of law because EEOC—not CRST—is the prevailing party here and neither fees nor costs should have been awarded to CRST.  And even if EEOC is not the prevailing party, fees were improperly awarded here because CRST does not meet this Court's narrow definition of "prevailing defendant" entitled to a Title VII fee award.

### A. EEOC is the prevailing party because it obtained a favorable ruling on one issue on appeal and relief for one of its claimants in a suit alleging only one claim for relief.

The Supreme Court and this Court apply a very broad definition of "prevailing plaintiff" in civil rights cases:  a civil rights plaintiff is "a prevailing party" as long as it "obtain[s] at least some relief on the merits of

---

[9]  42 U.S.C. § 2000e-5(k) provides:  "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

Appellate Case: 13-3159     Page: 44     Date Filed: 01/16/2014 Entry ID: 4114811

[its] claim." *Farrar*, 506 U.S. at 111 (construing "prevailing party" under 42 U.S.C. § 1988, an analogous fee-shifting provision for civil rights lawsuits). "Prevailing" status does not depend on the extent or significance of the relief obtained. As long as the relief "materially alters the relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," a plaintiff is the prevailing party if it obtained "at least some relief on the merits," even if only a "technical" victory with nominal damages. *Id.* at 111-12; *see also Marquart*, 26 F.3d at 850. A plaintiff's minimal degree of success may justify denial of attorneys' fees, but it does not alter the plaintiff's status as "prevailing." *See Farrar*, 506 U.S. at 114-15.

This Court characterized these "contours of what constitutes a prevailing civil rights plaintiff for purposes of fee shifting" as "extreme," but considered such an extreme standard to be necessary to implement the "broad, policy-oriented, *Christiansburg* definition" of a Title VII plaintiff's entitlement to fees. *Marquart*, 26 F.3d at 850. As this Court explained, Congress considered fee awards to prevailing plaintiffs essential "to

34

encourage the vigorous enforcement of rights protected under Title VII"
and to "punish employers who violate federal law." *Id.* at 849 (citations
omitted).[10]

Under this definition, EEOC is the prevailing plaintiff here. In
EEOC's prior appeal, this Court reversed the district court's ruling that
judicial estoppel prevented the Commission from seeking relief for women
who failed to list their claim against CRST in their bankruptcy petitions.
*EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 680-82 (8th Cir. 2012). This
is a significant ruling on an issue not previously addressed by this Court or
any other federal court of appeals, and it changed the legal relationship

---

[10] The same standard for fee awards to prevailing defendants under
42 U.S.C. § 2000e-5(k) applies equally to Title VII lawsuits brought by the
EEOC and private plaintiffs. *See Christiansburg*, 434 U.S. at 422 n.20. Thus,
although the EEOC is not entitled to a fee award when it prevails, because
the statute provides for fees only for private litigants, the analysis this
Court applies here in determining whether EEOC or CRST is the prevailing
party—a determination that, in turn, informs whether the district court
erred in awarding fees to CRST—will govern future cases involving private
Title VII plaintiffs. Likewise, the same standard for awarding costs applies
here where the EEOC is the plaintiff as would apply if the plaintiff were a
private party. *See* 28 U.S.C. § 1920 (taxation of costs); Fed. R. Civ. P.
54(d)(1) (costs other than attorneys' fees should be allowed to the
prevailing party).

35

between CRST and the EEOC to the benefit of EEOC.  *Farrar*, 506 U.S. at 111-12.

As a result of its judicial estoppel ruling, this Court vacated the district court's adverse ruling with respect to Monika Starke.  This Court also reversed the lower court's ruling that EEOC did not allege actionable harassment with respect to Tillie Jones and remanded the case for further proceedings with respect to both individuals.  EEOC thereafter obtained $50,000 in monetary benefits for Starke in a settlement agreement expressly incorporated into the district court's dismissal order.  A-335-339.  A judicial victory on an important legal principle (the judicial estoppel issue) followed by a settlement of $50,000 constitutes far more than a mere technical victory or nominal relief and renders EEOC the prevailing party. *See Farrar*, 506 U.S. at 111 (relief through settlement supports prevailing party status).  Consequently, not only fees, but costs, as well, were wrongly imposed on the EEOC.

This Court's action in the prior appeal, with respect to fees, further reinforces that EEOC is the prevailing party here.  Although this Court

36

affirmed the district court on the issues other than judicial estoppel, Starke, and Jones, the Court vacated not just the amount of attorneys' fees the district court had awarded CRST, but the award itself. As this Court explained, its remand of the case for a determination with respect to Starke and Jones meant CRST was "no longer a 'prevailing' defendant because the EEOC still asserts live claims against it." *See CRST*, 679 F.3d at 694-95 (citing *Marquart*, 26 F.3d at 852).

There were, thereafter, only two relevant changes in the parties' circumstances: EEOC decided not to seek relief for Jones, and CRST agreed to settle EEOC's lawsuit by giving EEOC $50,000 in monetary relief for Starke. If CRST was not a "prevailing" defendant *before* it agreed to give EEOC $50,000—and that is what this Court said when it vacated the district court's initial award of fees—CRST did not become a "prevailing" party by agreeing to give EEOC $50,000 for Starke.

The district court recognized that EEOC obtained monetary relief for Starke—indeed, the court expressly incorporated the settlement agreement into its dismissal order. A-335-339. Nevertheless—and without

37

distinguishing *Farrar*—the court cited *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011), for the principle that "[a] defendant need not prevail on every claim . . . to be entitled to attorneys' fees" under Title VII. A-309. The court reasoned that "EEOC asserted multiple and distinct claims" against CRST and CRST prevailed on all but one of those separate and distinct claims. A-311. The court erred.

EEOC asserted only one claim against CRST: that it violated Title VII by countenancing sexual harassment of its female trainees and drivers. Black's Law Dictionary defines a "claim" as, among other things, a "cause of action." The EEOC's one-count complaint contained a single cause of action: the allegation that CRST violated Title VII by failing to prevent and failing to remedy appropriately the sexual harassment of Starke and other women by male trainers and co-drivers. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, (1976) (where plaintiffs' complaint "advanced a single legal theory" that insurance benefits and maternity leave regulations discriminated against women employees in violation of Title VII "which was applied to only one set of facts," the complaint set forth a single claim

38

even though the lawsuit sought relief for multiple women affected by the allegedly unlawful policy).

When the Commission exercises the litigation authority recognized in *General Telephone Co. v. EEOC*, 446 U.S. 318, 323-24 (1980), to seek relief for a class of aggrieved workers, each alleged type of Title VII violation is a single claim irrespective of the number of employees whom the EEOC contends were harmed. Courts have recognized that each person on whose behalf the EEOC seeks relief does not constitute a separate, individual "claim."

For example, in *EEOC v. Global Horizons*, No. 11-3045, 2013 WL 3940674, at *9 (E.D. Wash. Jul. 31, 2013), the district court granted the defendants' motion to limit the number of claimants for whom EEOC could seek relief in a Title VII class claim of discrimination based on national origin/race, but denied defendants' application for attorneys' fees, concluding they were not prevailing parties. The court had ruled that EEOC could not seek relief for persons who ceased working for defendants more than 300 days before the first charge was filed. In denying fees, the

39

court explained that its ruling "*did not dispose of any EEOC claim* but rather restricted the individuals on whose behalf the EEOC can seek relief through its claims and narrowed the window of conduct against which Defendants must defend." *Id.* (emphasis added). Thus, the ruling "did not sufficiently alter the legal relationship between the parties" to justify an award of fees. *Id.*

Likewise, the EEOC's one count complaint contending that CRST was liable under Title VII for having failed to prevent and to remedy adequately the sexual harassment of multiple women stated a single claim against CRST, for which EEOC ultimately obtained some relief. Nothing about the outcome justifies an award of fees or costs to CRST. Although this Court referred to "live claims," in the plural, when it vacated the district court's original fee award, A-290, this Court appears to have used that phrase in a non-technical sense to refer to EEOC's allegations involving specific claimants, not in the sense of a "cause of action." Thus, this Court's explanation of its decision to vacate the district court's award of fees does not undermine the EEOC's "one claim" argument.

40

This view does not lead to "truly absurd results," as the district court supposed. *See* A-311. The court reasoned that viewing the EEOC's lawsuit as stating a single claim under Title VII, even though EEOC sought relief for multiple individuals, would allow EEOC to add as many frivolous allegations as it chose and still avoid liability for attorneys' fees. The court concluded that such a result would allow EEOC to contravene the congressional policy embodied in section 2000e-5(k) "by artfully crafting a complaint using vague language to hide frivolous allegations." A-311. But if EEOC truly acts in bad faith by consciously crafting a "burdensome" lawsuit that has "no legal or factual basis," the federal rules provide a means for addressing such purposeful, bad-faith conduct. That is not what happened here, however, and a review of case law over the past 40 years suggests it is exceedingly rare.

Furthermore, even if EEOC's lawsuit is viewed as encompassing multiple "claims" because EEOC sought relief for multiple women, those claims for relief are not separate and distinct; they are interrelated instances of the same Title VII violation EEOC alleged. When claims are interrelated

41

rather than based on distinctly different legal wrongs, the rule of *Farrar* controls. Thus, *Fox* does not support the imposition of fees on EEOC here.

The *Fox* rule derives from the Supreme Court's statement in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that "a court could properly award fees to both parties—to the plaintiff, to reflect the fees he incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees he paid in defending against the frivolous one."[11] *Id.* at 434-35 n.10. Importantly, *Hensley* emphasized that a dual award to the plaintiff and the defendant for the claims on which they respectively prevailed might be appropriate only where the plaintiff's lawsuit presented "distinctly different claims for relief that are based on different facts and legal theories." *Id.* at 434-35.

In *Fox*, the Court relied on *Hensley* to hold that defendant Vice was entitled to seek fees for Fox's frivolous federal claims. 131 S. Ct. at 2214. *Fox* is distinguishable from the present case, however, because although

---

[11] The statement was *dicta* because the Court had granted certiorari to address whether *plaintiffs* could recover fees for unsuccessful claims as well as their successful claims; there was no question relating to fees due a prevailing defendant. *Hensley*, 424 U.S. at 426.

42

the claims in Fox's lawsuit arose out of a common set of facts (his candidacy for the elected office of chief of police), his federal civil rights claims for interference with the right to seek public office suit and his state-law claims, including defamation, were "distinctly different legal claims" based on "different . . . legal theories." *See Fox*, 131 S. Ct. at 2211.[12]

EEOC's lawsuit here did not include distinctly different legal claims based on different legal theories. Rather, at the least, EEOC advanced inter-related claims under the same statute and based on the same legal theory arising out of the same constellation of facts. The facts in *Farrar* itself are instructive on this point. The two plaintiffs in *Farrar* sued six government officials seeking $17 million for various constitutional and civil rights claims, but prevailed on only one claim against one defendant and obtained only nominal damages of $1. *Farrar*, 506 U.S. at 105-08. The Supreme Court identified the question before it as "whether a nominal

---

[12] The Court vacated the fee award and remanded to the district court to determine what portion of the fees Vice incurred defending the frivolous federal claims he would have incurred anyway, defending against the nonfrivolous state-law claims, ruling that Vice was not entitled to reimbursement for any fees he would have incurred anyway defending against non-frivolous claims. 131 S. Ct. at 2216-18.

43

damages award is the sort of 'technical,' 'insignificant' victory that cannot confer prevailing party status" and held that "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Id.* at 113-14 (citation omitted). The Court affirmed the denial of fees based on the insignificance of the relief obtained, but ruled unequivocally that the *Farrar* plaintiffs were the "prevailing parties." *Id.* at 114-16.

Even though *Farrar* was decided post-*Hensley*—indeed, the Court cited *Hensley*'s discussion of when a plaintiff is a prevailing party, *see Farrar*, 506 U.S. at 109 (citing *Hensley*, 461 U.S. at 433)—and even though the defendants in *Farrar* "prevailed" on most of the plaintiffs' claims, the Court simply affirmed that the plaintiffs were the prevailing parties and that the lower court properly denied them fees because their success was so minimal. The Court made no suggestion that the *Farrar* defendants might be entitled to fees for having prevailed on the majority of the plaintiffs' claims. EEOC submits that this is because the *Farrar* plaintiffs' successful and unsuccessful claims all arose out of a "common core of facts" and involved "related legal theories." *See Hensley*, 461 U.S. at 435.

44

This Court, too, has upheld prevailing party status for plaintiffs who prevailed on only a fraction of the civil rights claims they brought and, indeed, upheld awards of attorneys' fees to the plaintiffs in such situations. *See Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 765-66 (8th Cir. 2008) (affirming plaintiffs were prevailing parties under *Farrar* based on their success on one of four counts in their complaint and affirming award of fees under *Hensley* based on injunctive relief); *see also Polacco v. Curators of Univ. of Mo.*, 37 F.3d 366, 370-71 (8th Cir. 1994) (affirming fee award to plaintiff who prevailed on only one of many claims advanced; no suggestion defendant was entitled to fees for the many claims on which it prevailed). In these cases, as in *Farrar*, the plaintiffs' claims all appear to have been inter-related in ways that would have defeated an award of fees to the partially-prevailing defendants, had defendants sought such fees.

The district court erred here in relying on the *Fox-Hensley* rule and ignoring *Farrar*, because even if EEOC's lawsuit is viewed as encompassing multiple claims for relief, those multiple claims were not "distinctly different" or "unrelated" as required by *Fox-Hensley* before a defendant

45

may be awarded fees where a plaintiff's suit includes both frivolous and non-frivolous claims.  Rather, as in *Farrar* and *Lowry*, EEOC's claim that CRST violated Title VII with respect to Starke and other women involved a single statutory right and a single legal theory—the contention that CRST failed to take appropriate steps to prevent and remedy the sexual harassment experienced by its female trainees and drivers.  And to establish CRST's liability for this alleged violation, EEOC relied on a common core of facts—CRST's inadequate policies and practices concerning sexual harassment and, in particular, the consistently-inadequate manner in which CRST responded to harassment complaints it received.

Specifically, the anti-harassment policy that CRST distributed to its employees during initial orientation informed trainees and trainers that harassment was unacceptable.  It required all harassment complaints to be forwarded to CRST's HR Department, where they were addressed by only two people:  HR Director Jim Barnes or his assistant, Lisa Oetken.  Irrespective of circumstances, they responded to each harassment

46

complaint in virtually the same way. Whether a woman was complaining of repeated, demeaning or sexually explicit language; indecent exposure; sexual propositions; threats of sexual assault; or outright rape, Barnes and Oetken simply recorded the complaint, informed the driver that if he *had* engaged in harassment, he should not do it again ("verbal warning") without determining whether a violation had occurred, and sometimes restricted an accused harasser from driving with women for the next six months (a "no females" restriction that was not always enforced after imposed). Barnes and Oetken made no efforts to determine whether a complaint was credible and did not deviate from the response described above, regardless of the severity of an allegation or the fact that complaints of egregious harassment complaints persisted.

EEOC can obtain relief for any specific claimant on a claim of sexual harassment only if it proves that the harassment she experienced was (1) because of her sex, (2) severe or pervasive, and (3) unwelcome. But the need for such individualized proof does not undermine the common elements of EEOC's contention that CRST was liable for each instance of

actionable harassment—a contention resting on both a single legal theory and common core of facts.

Thus, even if EEOC's effort to obtain relief for multiple women is viewed as stating separate "claims"—a characterization EEOC vigorously contests—those "claims" were not "distinctly different" or "unrelated," as *Fox* and *Hensley* would require before CRST could be entitled to fees or costs. The legally-identical and factually-connected nature of EEOC's claim for each CRST driver who complained of sexual harassment establishes that CRST is not entitled to fees or costs under the controlling standards of *Farrar*, *Hensley*, and *Fox*.

**B.  The court's ruling that EEOC failed to satisfy Title VII's presuit requirements was not a ruling on the merits and, therefore, CRST is not a prevailing party with respect to that ruling.**

The district court also erred as a matter of law in awarding fees because the ruling on which CRST primarily prevailed and which was the sole basis on which the district court initially awarded fees to CRST—that the EEOC failed to satisfy Title VII's presuit requirements—does not go to the merits of EEOC's Title VII claim against CRST. Rather, it is a

48

procedural ruling that does not address, at all, the substance of EEOC's claim that CRST failed to prevent and remedy workplace sexual harassment. Such a ruling does not constitute the type of merits-related decision that this Court held, in *Marquart*, is necessary to warrant according a Title VII defendant the status of "prevailing party."

In *Marquart*, this Court explained that a defendant is not a "prevailing" party for purposes of Title VII's fee-shifting provision unless two conditions are met: a judicial determination on the merits of the plaintiff's case and, in addition, a judicial determination that the plaintiff's case was frivolous, unreasonable, or groundless. *Marquart*, 26 F.3d at 851-52. Absent these two conditions, a Title VII defendant is not a "prevailing party" for purposes of awarding fees, even if the defendant has succeeded in bringing the plaintiff's lawsuit to an end.

No such ruling on the merits occurred here with respect to Monika Starke or the 67 women for whom, the district court ruled, the EEOC presented actionable claims of a Title VII violation. To the contrary, CRST failed to move for summary judgment with respect to 32 women, and the

district court *rejected* CRST's merits-based motions with respect to another 35 women. Further, this Court rejected CRST's merits-based contentions with respect to Jones.

The only reason the court dismissed EEOC's lawsuit after finding that EEOC alleged actionable harassment with respect to 67 women was the court's conclusion that EEOC had failed to undertake certain administrative steps that Title VII requires before EEOC can file suit. The court mistakenly concluded that demonstrating satisfaction of Title VII's presuit conditions is an "ingredient" of EEOC's Title VII claim. Analogizing to a Supreme Court decision addressing Title VII's requirement that an employer have a minimum of fifteen employees to be covered by the Act, the court concluded that its ruling that EEOC failed to satisfy Title VII's presuit requirements fell within *Marquart*'s requirement of a ruling on the merits. *See* R.400 at 20 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (Title VII's employee-numerosity requirement "is an element of a plaintiff's claim for relief, not a jurisdictional issue")).

50

The district court erred. *Arbaugh* is inapposite, because Title VII's presuit conditions are very different from Title VII's employee-numerosity provision. The latter distinguishes employers who are subject to Title VII's prohibitions from those who are not. In other words, if an employer does not meet the statute's numerosity requirements, there is no possible claim because such an employer cannot violate Title VII. Consequently, whether an employer has sufficient employees to be covered under Title VII is properly viewed as an element of a plaintiff's claim for relief, regardless of whether the plaintiff is the EEOC or a private employee.

Whether a plaintiff has satisfied Title VII's presuit requirements, on the other hand, presents a very different question. A plaintiff (either a private plaintiff or the EEOC) asserting a claim of sexual harassment under Title VII must demonstrate that the employer is covered under the Act and the factual elements of the claim. A private plaintiff can file suit under Title VII only if she filed a timely charge with EEOC alleging sexual harassment and then filed her lawsuit within 90 days of receiving an EEOC right-to-sue notice. *See* 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1); *McSherry v.*

51

*Trans World Airlines, Inc.*, 81 F.3d 739, 740 n.3 (8th Cir. 1996) (*per curiam*). Satisfaction of those statutory presuit requirements is not, however, an element of the plaintiff's discrimination claim. *See Rester v. Stephens Media, LLC*, --- F.3d ---, 2014 WL 103968, at *2 n.2 (8th Cir. Jan. 13, 2014) (distinguishing between merits of a claim and satisfaction of Title VII presuit requirements); *McSherry*, 81 F.3d at 740-41 (plaintiff's claim under Americans with Disabilities Act (ADA), which incorporates Title VII's procedural requirements, accrued upon plaintiff's termination by employer even though plaintiff had not yet received his EEOC right-to-sue notice).

As this Court explained in *McSherry*, although the EEOC right-to-sue letter is a statutory prerequisite to suit, it does not "create a claim." Rather, an employee's receipt of a right-to-sue notice is merely a step that must occur before the employee can pursue the claim in court. *Id.* at 740-41; *see also Sanchez v. Northwest Airlines, Inc.*, 659 F.3d 671, 675 (8th Cir. 2011) (plaintiff's ADA claim accrued when employer rescinded plaintiff's promotion, not when EEOC issued right-to-sue notice); *Holcombe v. U.S. Airways, Inc.*, 369 Fed. App'x 424, 428 (4th Cir. 2010) (EEOC right-to-sue

52

notice is "a procedural requirement" that "does not give rise to the [plaintiff's] ADA claim).[13]

Likewise, Title VII requires EEOC to issue a reasonable cause finding and attempt conciliation before filing *any* lawsuit—not just one claiming sexual harassment.   *See* 42 U.S.C. § 2000e-5(b), (f)(1).   Nevertheless, although these administrative steps are a presuit requirement, they are not "elements" of an EEOC claim of sexual harassment or of any other Title VII violation.  They do not distinguish which employers are subject to Title VII, nor whether an employer has violated Title VII, but only whether the case has undergone the type of pre-litigation process that Congress intended before EEOC is free to file a lawsuit, *i.e.*, a process that gives employers an opportunity to resolve a dispute short of litigation.

Indeed, the procedural steps Title VII imposes may be accomplished in ways that can differ markedly from case to case.  *See EEOC v. Mach Mining, LLC*, --- F.3d ---, 2013 WL 6698515, at *4 n.2 (7th Cir. Dec. 20, 2013).

---

[13]    In *McSherry*, this Court mistakenly referred to Title VII presuit requirements as "jurisdictional."  *See* 81 F.3d at 741.  This Court, however, has clarified that Title VII's statutory presuit requirements are *not* jurisdictional in nature.  *See Rester*, 2014 WL 103968, at *2 n.2.

53

They are also largely (and properly) shielded from judicial review. *See EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005) (no judicial review of EEOC reasonable cause determination); *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 834-35 (D.C. Cir. 2001) (same); *Georator Corp. v. EEOC*, 592 F.2d 765, 767-69 (4th Cir. 1979) (same); *Mach Mining*, 2013 WL 6698515, at *3-12 (holding Title VII contains no affirmative defense for failure to conciliate based, in part, on express statutory langue making clear that conciliation is an informal process entrusted to the EEOC's discretion which is not amenable to judicial review).

The distinction in the Federal Rules of Civil Procedure between what is required in a complaint with respect to the elements of a claim and the conditions precedent for bringing that claim further supports the conclusion that satisfying conditions precedent is not an "ingredient" of a claim. Under Rule 8, a plaintiff's complaint must include "a short and plain statement *of the claim* showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 678

Appellate Case: 13-3159    Page: 65    Date Filed: 01/16/2014 Entry ID: 4114811

(2009) (complaint must contain sufficient factual content to permit reasonable inference that defendant is liable for misconduct alleged).

Conditions precedent—such as Title VII's administrative prerequisites to suit—are not included in this requirement, however. Instead, under Rule 9, "it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c); *EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 106-07 (5th Cir. 1981) (per curiam). Only if the defendant's answer denies "with particularity" that a condition precedent occurred or has been performed is a plaintiff required to offer details to demonstrate the condition was satisfied. Fed. R. Civ. P. 9(c). This statement of separate pleading standards for claims versus conditions precedent reinforces the conclusion that establishing that EEOC satisfied its statutory presuit requirements is not an "ingredient" of EEOC's Title VII claim against CRST.

This conclusion is reinforced by the fact that many courts, upon finding that EEOC failed to satisfy one or more of Title VII's presuit steps, have stayed the case to allow the Commission to complete the step. *See,*

55

*e.g., EEOC v. Evans Fruit Co., Inc.*, 872 F. Supp. 2d 1107, 1116-17 (E.D. Wash. 2012); *EEOC v. Crye-Leike, Inc.*, 800 F. Supp. 2d 1009 (E.D. Ark. 2011); *EEOC v. McGee Bros. Co.*, 2011 WL 1542148, at *7 (W.D.N.C. Apr. 21, 2011); *EEOC v. Die Fliedermaus*, 77 F. Supp. 2d 460, 467-68 (S.D.N.Y. 1999). As the Seventh Circuit recently noted, this is really the only appropriate remedy when a defendant complains of insufficient process; a stay to permit further conciliation cures the alleged deficiency, and there is "no sound basis for dismissing a case on the merits." *Mach Mining*, 2013 WL 6698515, at *12.

Even courts that have dismissed an EEOC's lawsuit rather than stay the case to permit further conciliation have ordinarily dismissed "without prejudice." *See, e.g., EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1044 (D. Ariz. 2013) (dismissing without prejudice twenty-one claimants not identified until after EEOC filed suit); *EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245, 1247, 1253, 1254-58 (M.D. Ala. 1980).

The "primary meaning of 'dismissal without prejudice' . . . is dismissal without barring plaintiff from returning later, to the same court,

56

with the same underlying claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). Thus, dismissal without prejudice permits the EEOC, if it chooses, to complete the missing procedural step(s) and re-file suit, a point at least one court expressly noted. *See, e.g., EEOC v. Sears, Roebuck & Co.*, Civ. No. 79-cv-5708, 1980 WL 180, at *1-2 (S.D.N.Y. June 16, 1980) ("The EEOC will not be stymied by a dismissal of this action without prejudice. The commission can institute this action again providing it does so properly."). In contrast, if the EEOC (or any plaintiff) fails to establish an element of its claim, the case is properly dismissed with prejudice. *See, e.g., Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945-46 (8th Cir. 1994) (affirming summary judgment because, although plaintiff's evidence sufficed on other elements of his discrimination claim, he failed to offer sufficient evidence of pretext).

As all of these authorities indicate, EEOC's administrative presuit steps are not an "ingredient" of a Title VII claim. Therefore, the district court's dismissal here on the ground that EEOC failed to complete presuit administrative steps for individuals other than Starke was not a ruling on

Appellate Case: 13-3159    Page: 68    Date Filed: 01/16/2014 Entry ID: 4114811

the merits of EEOC's underlying Title VII claim. If not for this non-merits ruling, EEOC would have proceeded to trial on its claim that CRST failed to prevent and/or remedy effectively the sexual harassment experienced by 69 women. Under *Marquart*, CRST is not the "prevailing defendant" under these circumstances. The district court erred in concluding that "dismissal of claims due to the EEOC's failure to satisfy its presuit obligations is a dismissal on the merits of the EEOC's claims." A-314.

## II. CRST is Not Entitled to Fees Because EEOC's Lawsuit Was Not Frivolous, Unreasonable, or Without Foundation.

Even if CRST is deemed a prevailing party here, it is not entitled to fees because EEOC's lawsuit was not "frivolous, unreasonable, or without foundation" as required for a fee award to a prevailing defendant. *Christiansburg*, 434 U.S. at 421. The Supreme Court cautioned district courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421-22. The Court explained that this type of "hindsight logic could discourage

58

all but the most airtight claims," a result that would undermine Congress's desire for "vigorous enforcement of the provisions of Title VII." *Id.* at 422.

*Christiansburg*'s facts are instructive. After dismissing EEOC's lawsuit on the ground that EEOC lacked statutory authority to file it, the district court declined to award fees to the prevailing defendant, reasoning that EEOC's interpretation of its statutory authority to sue, although wrong, was not frivolous and presented an issue warranting judicial resolution. *EEOC v. Christiansburg Garment Co.*, 1975 WL 317 (W.D. Va. 1975). The Supreme Court agreed, concluding that although EEOC had incorrectly interpreted its statutory authority, it was not unreasonable for the Commission to have advanced this legal position, and further agreeing that the question warranted judicial determination. 434 U.S. at 423-24.

This Court has repeatedly reiterated *Christiansburg*'s caution against "hindsight logic." *See, e.g.*, *Marquart*, 26 F.3d at 848-49; *EEOC v. Kenneth Balk & Assocs.*, 813 F.2d 197, 198 (8th Cir. 1987); *Robinson v. Monsanto Co.*, 758 F.2d 331, 336 (8th Cir. 1985); *cf. Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 843 (8th Cir. 2008) (applying *Christiansburg* in reversing fee

59

award to defendant under § 1988). As this Court noted, "[e]ven '[a]llegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, "groundless" or "without foundation" as required by *Christiansburg*.'" *Kenneth Balk*, 813 F.2d at 198 (citation omitted). As this Court further explained, "[s]o long as the plaintiff has 'some basis' for the discrimination claim, a prevailing defendant may not recover attorneys' fees." *Id.* (citation omitted).

The district court gave only lip service to these admonitions against post hoc reasoning. Without analyzing whether EEOC had "some basis" (*i.e.*, a legal and factual foundation) for its arguments and positions, the court simply reiterated each of its summary judgment rulings in favor of CRST and then concluded, with little or no analysis, that EEOC's positions were all unreasonable and without foundation. *See generally* A-317-320, 326-329. In so doing, the district court erred as a matter of law and abused its discretion.

60

## A. EEOC reasonably believed it satisfied Title VII's presuit requirements.

The court erred as a matter of law when it ruled that "EEOC's actions in pursuing this lawsuit were unreasonable" based on the court's earlier finding that EEOC failed to satisfy Title VII's presuit requirements. *See* A-317-318 (quoting its original award of fees, A-242). A party's position is unreasonable only when there is no basis for it. *See Kenneth Balk*, 813 F.2d at 198; *EEOC v. Bruno's Restaurant*, 13 F.3d 285, 288 (9th Cir. 1993) (proper inquiry in fee determination is not whether EEOC failed to conciliate properly but whether EEOC's belief it had done so was reasonable). There was ample support here for the EEOC's position on this legal question.

First, the court relied unduly on the fact that, in the prior appeal, this Court affirmed dismissal of EEOC's lawsuit on this ground. A-317-318 (citing *CRST*, 679 F.3d at 672-77). That a majority of this Court affirmed dismissal of EEOC's lawsuit on this basis establishes only that EEOC lost on this point; it says nothing about whether EEOC's contention that it satisfied Title VII's presuit requirements was reasonable or unreasonable.

61

Furthermore, the district court misleadingly described this Court's affirmance as "without qualification," A-317, wholly ignoring the dissent of one member of this Court on this point. *See* A-290-292 (Murphy, J., dissenting). An appellate dissent constitutes strong evidence that a party's position was not frivolous. *See EEOC v. Maricopa Cnty.*, 339 Fed. App'x 688 (9th Cir. 2009); *EEOC v. J.B. Hunt Transp., Inc.*, 75 Fed. App'x 853, 855 (2d Cir. 2003).

The dissent's reasoned analysis and supporting case law demonstrate that the EEOC had far more than "some basis" for believing it fully satisfied Title VII's presuit requirements for seeking relief for unnamed individuals who experienced the same type of discrimination as Monika Starke. As Judge Murphy correctly recognized, "[n]either Title VII nor [this Court's] prior cases require that the EEOC conduct its presuit obligations for each complainant individually when litigating a class claim." *See* A-291 (Murphy, J., dissenting). No provision of Title VII directly addresses this question, and, prior to *CRST*, this Court had required only that EEOC "perform these duties for each **type** of Title VII

62

violation alleged by the complainant." *Id.* (citing *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668-69 (8th Cir. 1992)).

More importantly, before this case, this Court had never held that a district court could review whether EEOC's investigation was sufficiently thorough to support the EEOC's discrimination finding in its reasonable cause determination, as the district court did in this instance. An EEOC lawsuit can be only as broad as EEOC's reasonable cause determination. *See Delight Wholesale*, 973 F.2d at 668-69. EEOC's suit against CRST met this requirement: EEOC's reasonable cause determination specified EEOC's belief that other women besides Starke were affected by the same discriminatory practice, and EEOC's lawsuit sought relief for Starke and other women on this single claim. EEOC filed suit, reasonably believing Title VII does not require specification of all claimants before EEOC seeks judicial relief for them.

Not long after EEOC filed suit, the district court adopted a discovery schedule that included deadlines for identifying EEOC's claimants. A-51-54. Thus, CRST and the court both knew, early on, that EEOC was using

Appellate Case: 13-3159    Page: 74    Date Filed: 01/16/2014 Entry ID: 4114811

discovery to identify additional claimants. Yet when CRST filed its seven summary judgment motions in February 2009—the deadline for dispositive motions—CRST did *not* move for summary judgment based on Title VII's presuit requirements. *See* R144-R.150. Although the court ultimately concluded that EEOC's identification of additional claimants in discovery was impermissible, A-185-224, the fact that it had countenanced this practice for more than a year, and CRST's initial failure to file a motion on this ground, suggest that both the court and CRST thought EEOC's conduct satisfied Title VII's presuit requirements as previously understood under controlling case law.

When this Court affirmed the district court on this point, it effectively ruled that the evidence EEOC had uncovered during its investigation concerning other harassment complaints was inadequate to support EEOC's determination that other women besides Starke were adversely affected by CRST's unlawful conduct. Not only has this Court never before upheld close judicial scrutiny of EEOC's administrative determinations, other circuits—as the dissent noted—have expressly rejected such scrutiny.

64

*See* A-291 (Murphy, J., dissenting) (noting that "other circuit courts have similarly held that the 'nature and extent' of the EEOC's investigation is beyond the scope of judicial review" and "that the EEOC need not separately conciliate individual class members when pursuing a class based sexual discrimination claim.").

Judge Murphy cited three out-of-circuit decisions holding that Title VII authorizes EEOC to seek relief in litigation for individuals not identified during the administrative process: *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097, 1100-01 (6th Cir. 1984) (Title VII claim of class-wide gender discrimination); *EEOC v. Rhone-Poulenc, Inc.,* 876 F.2d 16, 17 (3d Cir. 1989) (ADEA class claim); and *Dinkins v. Charoen Pokphand USA, Inc.,* 133 F. Supp. 2d 1237, 1245-46 (M.D. Ala. 2001) (Title VII class sexual harassment case). A-291.

When EEOC filed this lawsuit in 2007, additional circuits had similarly rejected any requirement that EEOC identify, in the administrative process, all victims for whom it might later seek judicial relief. *See EEOC v. United Parcel Serv.,* 94 F.3d 314, 318 (7th Cir. 1996)

65

(recognizing, in *dicta*, EEOC's ability "to bring an action on behalf of a class of unidentified individuals"); *EEOC v. United Parcel Serv.*, 860 F.2d 372, 374 (10th Cir. 1988) (holding EEOC could challenge allegedly discriminatory policy that may affect unidentified members of a defined class); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185-86 (4th Cir. 1981) (reversing district court's decision, 1979 WL 25, at *83 (E.D. Va. 1979), that barred EEOC from seeking relief for 51 claimants identified only in discovery); *see also Caterpillar*, 409 F.3d at 833   (no judicial review of sufficiency of EEOC investigation to support EEOC's reasonable cause determination).

When this Court agreed with the district court that EEOC is limited to seeking relief for victims identified during its investigation, it not only rejected this circuit precedent, it also effectively ruled that EEOC is foreclosed from using ordinary discovery to identify additional victims. All the circuits that rejected scrutiny of conciliation necessarily confirmed that EEOC, like any other litigant, is permitted to use discovery to flesh out the factual contours of its claim, *see United States v. Procter & Gamble Co.*,

66

356 U.S. 677, 681 (1958), and is not limited to evidence gathered during EEOC's presuit administrative investigation.

Thus, when EEOC filed this lawsuit, this Court had never held that Title VII required EEOC to identify each claimant during the administrative process and separately investigate her individual allegations before seeking class-wide relief on a particular type of Title VII violation, and five circuits had expressly indicated Title VII did *not* require this. Under such circumstances, EEOC's position was not unreasonable. *Cf. EEOC v. L.B. Foster Co.*, 123 F.3d 746, 756 (3d Cir. 1997) (reversing fee award against EEOC because law in the circuit was uncertain when EEOC filed suit and there was out-of-circuit support for EEOC's position).[14]

Indeed, since this Court issued its decision in the first appeal, two circuits—the Sixth and Seventh—have reiterated that EEOC has broad discretion under Title VII to pursue relief without close judicial scrutiny of

---

[14] The Third Circuit explained that when EEOC filed its lawsuit, that circuit had not yet taken a position, under similar facts, on the legal question EEOC's lawsuit presented. The court further noted that, at the time, one other circuit had ruled in favor of EEOC's position. *L.B. Foster*, 123 F.3d at 756.

Appellate Case: 13-3159    Page: 78    Date Filed: 01/16/2014 Entry ID: 4114811

how EEOC conducted its presuit administrative steps, thereby confirming

the reasonableness of EEOC's position in this case. In *Serrano v. Cintas*,

699 F.3d 884 (6th Cir. 2012), *cert. denied sub nom. Cintas Corp. v. EEOC*,

134 S. Ct. 92 (2013), the Sixth Circuit expressly confirmed that EEOC did

not need to identify specific claimants before filing suit seeking relief for

them. The court held it sufficient that EEOC's reasonable cause

determination specifically found class-wide discrimination and that

EEOC's invitation to conciliate expressly sought relief for similarly-situated

women, *id.* at 904-05, as it did in this case.[15]

The Seventh Circuit's decision in *Mach Mining Co.*, --- F.3d ---, 2013

WL 6698515, further demonstrates that the question of the reviewability of

the sufficiency of EEOC's presuit administrative processes is in

---

[15] Relying on *Cintas*, a district court recently held that EEOC satisfied Title VII's presuit requirements under circumstances very similar to this case. *EEOC v. Multilink, Inc.*, Civ. No. 11-cv-2071, 2013 WL 980434 (N.D. Ohio Mar. 12, 2013). As here, the cause determination noted EEOC's belief that other unnamed individuals had also been affected by the discrimination, and EEOC's invitation to conciliate class-wide claims specified that additional employees would be identified during the conciliation process. *Id.* at *1-2. In finding these procedures consistent with Title VII, the district court explained it was "not empowered to examine or to criticize the nature and extent" of EEOC's investigation. *Id.* at *2.

Appellate Case: 13-3159     Page: 79     Date Filed: 01/16/2014 Entry ID: 4114811

considerable flux, and confirms that the EEOC reasonably believed, based on available precedent, that it had met all pre-suit requirements in this case. On interlocutory review of Mach Mining's asserted "failure-to-conciliate" affirmative defense, the Seventh Circuit held there is no judicial review of EEOC's conciliation efforts, based in part on its prior determination that the conduct and extent of EEOC investigations is beyond judicial review. *Id.* at *10 (citing *Caterpillar*, 409 F.3d 831).

The Seventh Circuit considered *Caterpillar* to provide analogous authority for its decision that nothing in the statutory language of Title VII contemplates judicial review of administrative functions committed by law to the agency's complete discretion. *Id.* at *3 ("It would be difficult for Congress to have packed more deference to agency decision-making into so few lines of text."). In rejecting a failure-to-conciliate defense, the court relied largely on Title VII's silence as to any meaningful standard to apply in conducting review of conciliation. *Id.* at *4. The court observed that this was the first time a circuit court had "reject[ed] explicitly the implied affirmative defense of failure to conciliate," and noted that the courts that

69

have decided to review conciliation efforts do so under a variety of standards that have no basis in Title VII and come to a variety of conclusions about how the EEOC's efforts measure up. *Id.* at *11. Specifically, as relevant here, the Seventh Circuit noted that district courts recently have come to different conclusions about whether the EEOC must "identify all claimants during conciliation," contrasting *Swissport Fueling*, 916 F. Supp. 2d at 1037-38, which held EEOC must, with *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1129 n.14 (D. Nev. 2007), which held it need not. *See Mach Mining*, 2013 WL 6698515, at *13 n.2.

In surveying other circuit approaches to judicial review of Title VII presuit requirements, the Seventh Circuit noted that no circuit had grounded its decision in the statutory language. The court further noted that these other circuits employed varying approaches, ranging from a searching three-part inquiry in the Second, Fifth, and Eleventh Circuits, to a review for good faith in the Fourth, Sixth, and Tenth Circuits. *Id.* at *11 (collecting and citing cases). Against this uncertain backdrop about the standard and level of scrutiny to which its efforts would be subjected, the

70

EEOC reasonably thought it had met the requirements of *Delight Wholesale*, 973 F.2d at 668-69, the only precedent on point in this circuit. Where the governing legal standards are in such a state of flux, it is particularly inappropriate to penalize a plaintiff for advocating a position well within the margins of the various judicial pronouncements on the issue. *See Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.9 (5th Cir. 1997) (defendant properly denied fees despite weakness of plaintiff's claims because law on a number of relevant points was "both in flux and not as unquestionably in [defendant's] favor" as defendant suggested).

The Seventh Circuit's analysis of the unreviewability of conciliation efforts supports the reasonableness of EEOC's view that it had satisfied Title VII's presuit requirements here, as Congress packed the same amount of deference to EEOC into Title VII's statutory directive that EEOC investigate charges and issue reasonable cause determinations. Title VII provides that "[w]henever a charge is filed . . . the Commission . . . shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). Title VII further provides that if the Commission "determines after such investigation"

71

there is not reasonable cause to believe the charge is true, EEOC must dismiss the charge and notify the charging party. *Id.* If the Commission determines there is reasonable cause to believe the charge is true, it must attempt conciliation. *Id.*

Nowhere does Title VII describe *how* the EEOC should conduct its investigations or how much evidence is enough to support a reasonable cause finding. Likewise, Title VII provides no procedure or standard for judicial review of the thoroughness of an EEOC investigation or the sufficiency of the evidence to support EEOC's determination. *Cf. Mach Mining*, 2013 WL 6698515, at *4 (lack of standard militates against review of acts committed to agency discretion).

Furthermore, to hold that a court can review whether EEOC's investigation supports the reasonable cause finding on which EEOC sued, as the district court did here, does not encourage employers to participate in the administrative process. *Cf. Mach Mining*, 2013 WL 6698515 at *7-8 (availability of judicial review encourages employers to use conciliation to set up a future "failure to conciliate" defense in hopes of obtaining

72

dismissal of any future EEOC suit).  Rather, it rewards defendants for withholding information that EEOC requests during the investigation (as CRST did here) with the hope they can thereby position themselves to raise an inadequate-investigation defense to any subsequent lawsuit EEOC might file based on the charge.  *See, e.g.*, *CRST*, 679 F.3d at 696-97 (Murphy, J., dissenting).

As Judge Murphy explained, if Title VII is construed to require EEOC to investigate separately and to conciliate individually each alleged victim of discrimination, "employers can avoid disclosure to EEOC of complaining workers while the Commission is conducting its investigation and conciliation, then reveal the names during court ordered discovery, and seek dismissal of the entire case on the ground of inadequate presuit efforts by the EEOC."  679 F.3d at 696-97.  Judge Murphy concluded that this "punishes EEOC for employer recalcitrance and weakens [EEOC's] ability to enforce Title VII effectively" and "frustrates the underlying goal of the 1972 amendments intended to strengthen the EEOC's enforcement powers."  *Id.* at 697 (citing *General Telephone*, 446 U.S. at 325).  Thus, the

Appellate Case: 13-3159    Page: 84    Date Filed: 01/16/2014 Entry ID: 4114811

Seventh Circuit's analysis in *Mach Mining* supports the reasonableness of Judge Murphy's and EEOC's belief that it satisfied all Title VII presuit requirements before filing this lawsuit.

Finally, the reasonableness of EEOC's belief that it satisfied presuit requirements before filing this lawsuit is further supported even by the cases on which the district court and the majority relied in ruling against the EEOC on this point, because those cases actually permitted the Commission to do what this Court now holds is not allowed. *See* 679 F.3d at 696 (Murphy, J., dissenting) (discussing *EEOC v. Jillian's of Indianapolis, Inc.*, 279 F. Supp. 2d 974, 983 (S.D. Ind. 2003); and *EEOC v. Dillard's, Inc.*, 2011 WL 2784516, at *6-8 (S.D. Cal. July 14, 2011) (EEOC "not required to identify every potential class member"), *reconsid. denied*, 2012 WL 440887, at *8-9 (S.D. Cal. Feb. 9, 2012)).  The Commission is aware of no circuit courts that have agreed with the majority's opinion on this point.

74

The Commission makes this argument not to challenge the propriety of this Court's May 2012 decision,[16] but to demonstrate the extensive judicial support for EEOC's belief that, before filing suit, EEOC did all that was necessary under Title VII to pursue this lawsuit as a class claim seeking relief for multiple women who experienced the same form of discrimination as Monika Starke and would be identified during discovery. Both the district court and this Court, in the first appeal, reserved decision on whether EEOC's presuit efforts would have been sufficient to support a pattern-or-practice claim, A-216 n.21; A-277 n.13, but there has never been a suggestion in any other case that Title VII's presuit requirements should vary depending on the method of proof used to establish a claim. The EEOC thus had no reason to suspect its presuit efforts would be deemed deficient in this class case, regardless of how the claim would be litigated.

The district court ignored all of the above-noted precedent as well as Judge Murphy's dissent, stating in its fee decision only that it "affirms its earlier conclusion that the EEOC's failure to exhaust Title VII's

---

[16] EEOC previously sought *en banc* review, and three members of this Court voted to re-hear the case *en banc*. XVII-Apx.4732-33.

administrative prerequisites was unreasonable." A-317 (citing R.320 at 13-

16). And the cases the court *did* cite (*see* A-318) are inapposite. In *EEOC v.*

*Agro Distributors*, 555 F.3d 462 (5th Cir. 2009), the Fifth Circuit affirmed fees

accrued after the claimant's deposition, based solely on evidence

uncovered in discovery. *Id.* at 472-73. The court opined about EEOC's

conciliation efforts, but acknowledged that adequacy of conciliation was

not before it on appeal. *Id.* at 468-69 & n.7. *EEOC v. Pierce Packing Co.*, 669

F.2d 605 (9th Cir. 1982), is factually distinguishable. The Ninth Circuit in

that case dismissed EEOC's lawsuit and imposed fees on the ground EEOC

had not undertaken any of Title VII's presuit requirements: EEOC had not

engaged in any investigation, and had not issued a reasonable cause

finding or invited conciliation. *Id.* at 609. Here, on the other hand, EEOC

investigated the effect of CRST's practices on other women besides Starke

and issued a reasonable cause finding and invited conciliation on that

broader claim; the district court simply concluded that the investigation

EEOC conducted was insufficiently thorough to support the broader

76

finding in EEOC's reasonable cause determination and conciliation efforts.[17]

When EEOC filed this lawsuit, it reasonably believed that it had done all that Title VII requires to seek relief for other women besides Starke. *See Bruno's Restaurant*, 13 F.3d at 290. Given the extensive judicial support for EEOC's position and the absence of any Eighth Circuit decisions addressing this specific question, the district court committed legal error when it held that EEOC acted unreasonably in filing suit. *See L.B. Foster*, 123 F.3d at 756.

## B. EEOC's attempt to litigate this case using a pattern-or-practice method of proof was not frivolous or unreasonable and the same evidence was relevant to EEOC's non-frivolous claim for relief for individual women.

There are two distinct reasons why the district court erred as a matter of law in imposing fees, in part, on the ground that "EEOC's pattern-or-

---

[17] The district court also relied (A-318) on *EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987 (8th Cir. 2006), which does not appear to support its ruling. In *Trans States*, this Court affirmed the district court's denial of attorneys' fees to the defendant despite having granted its summary judgment motion, rejecting the defendant's claim that it was entitled to fees because EEOC allegedly ended conciliation proceedings prematurely. *Id.* at 996.

Appellate Case: 13-3159    Page: 88    Date Filed: 01/16/2014 Entry ID: 4114811

practice claim was unreasonable," A-318, a ground on which the court did not rely in its first fee award, A-227-265. First, although EEOC did not prevail in its argument that this was a pattern-or-practice case, EEOC's position was not frivolous or unreasonable.[18] Second, even if EEOC's position were frivolous or unreasonable, CRST would have incurred these defense fees anyway.

The court's only explanation for imposing fees on EEOC based on the pattern-or-practice issue was its reference to its April 30, 2009, Order (A-1) rejecting EEOC's pattern-or-practice argument. *See* A-318 (citing pages 57-67 of R.197). That decision explains the court's ruling on the merits of

---

[18] EEOC's one-count complaint does not include a "pattern-or-practice claim." *See* I-Apx.40. During discovery, EEOC advised the court and CRST that this was a pattern-or-practice case that EEOC proposed to litigate using the proof paradigm and bifurcated trial model of *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977). *See, e.g.*, I-Apx.66 (transcript of 11/12/2008 motion hearing) at I-Apx.72, 74. The court denied EEOC's motion for a bifurcated trial, stating EEOC had waited too long to seek this change in trial proceedings. III-Apx.770. The court thereafter granted CRST's motion for summary judgment and ruled that EEOC could not use the burden-shifting framework at trial. A-1 (4/30/2009). Among other things, the court reasoned that the proportion of women complaining of sexual harassment was insufficient to demonstrate that tolerating harassment was CRST's regular course of business. A-57-63.

CRST's motion for summary judgment on EEOC's pattern-or-practice "claim," but it does not address, at all, whether EEOC's attempt to pursue the case under a pattern-or-practice framework was "frivolous, unreasonable, or without foundation" under *Christiansburg*. The court's reliance on its prior order, without more, strongly suggests it imposed fees on the EEOC on the ground that because EEOC lost, the claim must have been unreasonable—the very *post hoc* reasoning that the Supreme Court condemned in *Christiansburg*. *See Christiansburg*, 434 U.S. at 421-22; *Marquart*, 26 F.3d at 849.

More importantly, the fact that it took the court sixty-seven pages to explain why it was rejecting EEOC's request to use a pattern-or-practice method of proof is probably the strongest evidence that EEOC's argument was not frivolous. This Court has held that a court should not award fees to a Title VII defendant if there was "some basis" to support the plaintiff's claim, even though that evidence was ultimately unavailing. *See, e.g., Obin v. Dist. No. 9, Int'l Ass'n of Machinists*, 651 F.2d 574, 586-88 (8th Cir. 1981) (reversing fee award to one defendant entirely and to other defendant in

79

part). Even "[a]llegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (reversing fees awarded civil rights defendant under 42 U.S.C. § 1988).

The district court's lengthy decision examined EEOC's evidence, arguments, and legal support. The court acknowledged that EEOC's evidence demonstrated, for the period in question, that "146 female drivers variously suffered physical, mental and/or emotional abuse at the hands of their male co-drivers and lead drivers." R.197 at 48.[19] The court also acknowledged that EEOC's evidence demonstrated occasions when CRST's dispatchers failed to follow CRST's instructions to remedy harassment complaints. *Id*. at 50-51. The court spent sixteen pages analyzing the parties' arguments based on this evidence. *Id.* at 51-67. The fact that, after this "careful examination," the district court concluded EEOC should not

---

[19] The court based this number on CRST's own records of complaints it received between January 2005 and October 15, 2008. The court excluded CRST records of approximately 100 additional sexual harassment complainants on whose allegations EEOC also relied. *See* A-54.

80

be allowed to use the pattern-or-practice method of proof does not demonstrate that EEOC's arguments were frivolous or unreasonable.

To the extent the district court's reference to its prior "pattern-or-practice" decision in its latest fee award explains why it found EEOC's pattern-or-practice arguments unreasonable, those reasons do not support a *Christiansburg* finding. The court stated that "EEOC presented only anecdotal evidence in support of its pattern-or-practice claim" and "did not present 'any expert evidence, statistics or legal authority to support its argument that there is so much sexual harassment of CRST's female drivers that CRST must tolerate sexual harassment'." A-318 (citing R.197 at 57-67). But the court, itself, acknowledged that statistical evidence is not necessary to prove a pattern-or-practice claim under Title VII. *See* A-60 (citing *Catlett v. Mo. Highway & Transp. Com'n*, 828 F.2d 1260, 1265 (8th Cir. 1987) (anecdotal evidence, alone, "may be sufficient to establish a pattern or practice of discrimination"). And EEOC *did* present the expert testimony of Dr. Michael Campion in opposition to CRST's summary judgment motion,

Appellate Case: 13-3159    Page: 92    Date Filed: 01/16/2014 Entry ID: 4114811

who opined that CRST's procedures were deficient after analyzing CRST's records of complaints and its responses. *See, e.g.*, R.168 at 12-13 & n.7.

Dr. Campion found only one documented instance when CRST had terminated a male driver for harassment. V-Apx.1306. Otherwise, regardless of the severity of the complaint, CRST never attempted to ascertain if a complaint was credible and, consequently, CRST never disciplined harassers. CRST considered it sufficient to counsel the alleged harasser that, whatever he did, he should not do it again (verbal warnings given in 29.3% of complaints CRST documented) and sometimes to bar the alleged harasser from driving with other women for a period of six months ("no female partners" imposed in 43.1% of documented complaints). *See* V-Apx.1304-09. Neither of these responses, however, lessened the frequency of harassment complaints.

EEOC also presented judicial precedent supporting its contention that CRST engaged in a pattern or practice of failing to prevent and adequately remedy complaints of sexual harassment. R.136; R.155; R.168. EEOC cited, among other authority, *Jenson v. Eveleth Taconite Co.*, 130 F.3d

82

1287, 1299-1300 (8th Cir. 1997), *EEOC v. Dial Corp.*, 259 F. Supp. 2d 710, 713-15 (N.D. Ill. 2003), and *EEOC v. Mitsubishi Motor Manufacturing of America*, 990 F. Supp. 1059, 1070 (C.D. Ill. 1998), R.168 at 3-9, as examples of cases in which courts had upheld use of the pattern-or-practice framework for similar claims of sexual harassment. *See also* R.155 at 3; R.168.

The district court found EEOC's judicial precedent unpersuasive, stating this case was "most similar" to *EEOC v. Carrols Corp.*, 2005 WL 928634 (N.D.N.Y. Apr. 20, 2005). A-63. In *Carrols*, the district court rejected EEOC's pattern-or-practice claim based, in part, on evidence that only 0.367% of women employed during the relevant timeframe had complained of harassment. *See* A-64. The court reached this calculation based on evidence that during an eight-year period, 333 female employees out of 90,835 total employees at the defendant's 206 restaurants had alleged sexual harassment. *Id.* The court further noted that Carrols had offered evidence that it had fired, suspended, or otherwise disciplined dozens of alleged harassers. A-65. The court applied the same analysis to EEOC's

83

suit against CRST and concluded EEOC's pattern-or-practice evidence was insufficient to withstand summary judgment.  A-66-67.

EEOC reasonably disagreed with the court's conclusion that the facts in *Carrols* are comparable to this case or that an out-of-circuit district court ruling on different facts should control the outcome in this case.  In contrast to 333 harassment complaints over an eight-year period in *Carrols* out of a workforce of over 90,000, EEOC presented evidence that more than 250 women (out of a much smaller workforce) had complained to CRST during only a three-and-a-half-year period.  And in contrast to Carrol's evidence that it disciplined dozens of alleged harassers through discharge, suspension, or other forms of discipline, CRST chose not to investigate harassment complaints so it was not in a position to mete out discipline to alleged harassers.  Consequently, CRST was able to document only one instance where it fired a driver for sexual harassment—but only after four separate women complained about his conduct.

The court concluded that the proportion of women who complained to CRST was not sufficiently great to permit EEOC to invoke the pattern-

84

or-practice burden-shifting method of proof. Nevertheless, fees were wrongly imposed because EEOC had more than "some basis" for pursuing a *Teamsters* model on these facts. *See Obin*, 651 F.2d at 586-88; *Trans States Airlines*, 462 F.3d at 996 (affirming district court denial of fees to prevailing defendant on ground that EEOC "had a colorable argument in support of [its] claims").

In addition, the district court erred in granting fees to CRST for challenging EEOC's pattern-or-practice contention because even if that contention is considered frivolous, CRST would have incurred the same defense fees regardless, given that EEOC relied on the same evidence for its non-frivolous claim on behalf of individual women. A defendant may recover only those attorneys' fees "incurred because of, *but only because of*, a frivolous claim." *Fox*, 131 S. Ct. at 2215 (emphasis added). If a frivolous claim caused the fees at issue, but the defendant would have incurred those fees anyway to defend against *non*-frivolous claims, a court has no basis to award those fees. *Id.*

85

When the district court ruled that EEOC would not be allowed to use the burden-shifting framework of a pattern-or-practice case at trial, it expressly recognized that the ruling did not resolve EEOC's claim that specific individuals were entitled to relief. R.197 at 57 (EEOC's anecdotal evidence "may subject CRST to liability as to individual women at trial"); 67 (opinion was not a final ruling on any individual claims EEOC presses in this lawsuit). The evidence on which EEOC relied in response to the pattern-or-practice motion is the same evidence on which EEOC relied to support its arguments that individual claimants were entitled to relief because (1) the harassment they experienced was severe or pervasive and (2) CRST's receipt of on-going and persistent complaints of harassment demonstrated CRST knew that harassment was on-going and that its existing policies and practices were ineffective. Given EEOC's reliance on this evidence, CRST would have incurred the same fees that it associated with its pattern-or-practice defense, even if EEOC had not advanced a pattern-or-practice argument. Thus, those fees were improperly shifted to the EEOC.

Appellate Case: 13-3159    Page: 97    Date Filed: 01/16/2014 Entry ID: 4114811

### C. EEOC had a non-frivolous basis for believing that the women it identified as claimants in this lawsuit experienced actionable harassment.

As noted above, the district court recognized that EEOC sought relief for individual claimants, irrespective of whether the court would permit it to seek such relief using a pattern-or-practice method of proof under *Teamsters* or, alternatively, under the standards established in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

The district court found potentially-actionable harassment with respect to 67 women (because either the court denied CRST's motion for summary judgment or CRST failed to move for summary judgment). This Court found potentially-actionable harassment with respect to 2 more women (Starke and Tillie Jones). The Commission obtained monetary relief for Starke. Several other women presumably entered into separate settlement agreements with CRST.[20]

---

[20] Interveners were represented by private counsel and voluntarily dismissed their claims just prior to court-scheduled settlement discussions. Their counsel signed a sworn statement stating it would not be accurate to

EEOC was unable to seek relief for the rest of the 69 women for a reason wholly unrelated to the merits of their harassment allegations—the court's conclusion, which this Court affirmed over Judge Murphy's dissent, that EEOC failed to satisfy Title VII's presuit requirements. But, in terms of whether EEOC had a reasonable basis for pursuing this litigation, the fact that EEOC's lawsuit included 69 claimants who alleged actionable harassment more than demonstrates that EEOC's lawsuit was not frivolous. Neither CRST nor the district court below cited any prior decision—and the EEOC knows of no such case—where an EEOC lawsuit was found to be frivolous despite the presence of such a significant number of claimants alleging potentially meritorious claims of discrimination. That additional potential claimants were found not to be entitled to relief after a careful examination of their individual allegations has never before been a

---

state that CRST was the prevailing party with respect to their claims. XVII-Apx.4742. Based on counsel's statement, EEOC presumes these women entered into confidential settlement agreements with CRST, further supporting the reasonableness of EEOC's belief they had experienced actionable harassment.

basis for imposing fees on the EEOC in a lawsuit seeking class-wide relief, and the award should be overturned here.

Indeed, the district court's conclusion that EEOC could be sanctioned for its vigorous enforcement efforts despite the court's identification of so many women with potentially-meritorious allegations of harassment turns the *Christiansburg* rationale on its head. The Supreme Court made clear in *Christiansburg*—and this Court reiterated in *Marquart*—that a significant reason prevailing plaintiffs are ordinarily entitled to their attorneys' fees, in contrast to the much narrower standard for awarding fees to a prevailing defendant, is that "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law," a consideration that is absent with respect to a prevailing defendant. *Christiansburg*, 434 U.S. at 417-19 (citations omitted); *see also Marquart*, 26 F.3d at848. Here, although EEOC's case never proceeded to a trial, both the district court and the dissent observed that EEOC was being denied its day in court with respect to numerous women whose allegations otherwise warranted trial. *See* A-222 ("dozens of potentially meritorious sexual

89

harassment claims may now never see the inside of a courtroom"); 679 F.3d at 697 (Murphy, J., dissenting) (describing EEOC's claim on behalf of these women as "trial worthy").

Thus, if this Court were to uphold fees here, it would be upholding a sanction against EEOC for attempting to enforce Title VII against an employer who has been judicially-determined to have potentially violated Title VII with respect to at least 69 of its employees.  That result is clearly not what the Supreme Court intended when it limited fees for prevailing Title VII defendants to situations where the plaintiff's case is frivolous, unreasonable, or without foundation.

In addition, EEOC had a plausible basis for arguing that the harassment experienced by women other than the 69 discussed above was sufficiently severe or pervasive to be actionable under Title VII.  For example, as EEOC described below and to this Court in the first appeal, harassment of female trainees and co-drivers occurred in isolated and remote circumstances, where trainers, in particular, could abuse the authority CRST had given them to control every aspect of a trainee's

90

training and virtually every aspect of her day-to-day life in the truck. *See, e.g.*, 679 F.3d at 697-98 (Murphy, J, dissenting) (describing "practical reality" of "isolated work environment" during extended over-the-road training assignments). Judge Murphy noted, in her dissent, that "CRST long haul trainers controlled almost all of trainee's day to day activities, including when she was permitted to drive, when she could stop to use the bathroom, and when she could use the truck's satellite device to communicate with the outside world." *Id.* at 697. The dissent further noted that "[t]his unique environment facilitated the ability of certain trainers to make sexual propositions and demand sexual favors." *Id.*

Finally, the dissent noted that during "trainees' extended time alone with the trainer" there was a "lack of oversight from company management." *Id.* at 698. This latter observation—lack of oversight from company management—applied equally to circumstances where female co-drivers alleged they were sexually harassed by a male driving partner.

EEOC argued below and to this Court in the first appeal that the harassment alleged here rose to the level of actionable severity not only

91

because of the nature of the conduct itself, but also because it occurred in an atypical workplace. In most workplaces, an employee who objects to sexually-harassing conduct can often simply walk away or, at the very least, complain to an on-site manager or supervisor. In contrast, the severity of sexually harassing conduct by CRST trainers and co-drivers during over-the-road assignments was heightened by: the remote and isolated nature of the workplace (the cab of a long-haul truck); the difficulty some women had in reaching their dispatcher to report the harassment; and the risk—as some harassers threatened—that a male co-driver or trainer would abandon a woman in an isolated location from which she would have extreme difficulty being rescued.

This Court has recognized that factors such as these could make conduct actionable harassment, even if similar conduct in a more public setting would not be actionable under Title VII. *See, e.g.*, *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) (plaintiff's "physical proximity to the harasser, and the presence or absence of other people," are among "factors . . . relevant in assessing the magnitude of harassment"); *Hathaway v.*

92

*Runyon*, 132 F.3d 1214, 1223 (8th Cir. 1997) (same).  In a more isolated setting, even a single episode of an unwelcome sexual advance can be actionable.  *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001) (reversing summary judgment where plaintiff's supervisor once "appeared barely clothed at the plaintiff's [hotel room] door, . . . sat on her bed, . . . touched her thigh and attempted to kiss her," and refused to leave her room for several hours).

EEOC further described, below and to this Court in the first appeal, that multiple women were subjected repeatedly to the following forms of unwanted conduct from male trainers and drivers, all of which had been found by this Court to be actionable sexual harassment under Title VII in other cases and the severity of which, EEOC argued, was heightened in this instance by the above-noted factors.  These forms of harassment include verbal abuse, gender-based denigration, public humiliation; graphic sexual discussions, exposure to pornography; urinating or masturbating in the presence of a trainee or co-driver; sexual propositions, unwanted touching, threats of sexual assault; and physical assault, sexual assault, and rape.

93

This Court has found this or similar types of harassment actionable. *See, e.g., Brenneman v. Famous Dave's of Am.*, 507 F.3d 1139, 1141-43 (8th Cir. 2007) (plaintiff's supervisor made sexual advances and sexually inappropriate comments, among other things); *Breeding v. Arthur J. Gallagher*, 164 F.3d 1151, 1159 (8th Cir. 1999) (plaintiff's supervisor continuously "fondled his genitals in front of her and used lewd and sexually inappropriate language"); *Howard v. Burns Bros.*, 149 F.3d 835, 838-41 (8th Cir. 1998) (co-worker made frequent sexual innuendos and jokes and brushed up against plaintiff intentionally in narrow workspace).

With respect to men urinating in the presence of their female trainees or co-drivers, verbally berating them, physically assaulting them, and depriving them of essential bathroom breaks and opportunities to eat or shower—conduct that can alter a woman's workplace substantially but is arguably not "sexual" in nature—this Court has expressly agreed with other circuits that "the predicate acts underlying a sexual harassment claim need not be clearly sexual in nature." *See Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010, 1014 (8th Cir. 1988). Specifically, this Court has found sufficient

94

severity based on a supervisor's persistent "derogatory comments" that led to plaintiff's depression. *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 (8th Cir. 1997). Hostile environment has also been found based on inadequate access to showers and bathroom facilities. *Wedow v. City of Kansas City*, 442 F.3d 661, 671-72 (8th Cir. 2006); *Kline v. City of Kansas City*, 175 F.3d 660, 668-69 (8th Cir. 1999).

Indeed, although this Court reversed the district court's grant of summary judgment with respect to Tillie Jones, her harassment allegations are not unlike those of other women whose allegations were summarily discounted by the district court. Jones had complained repeatedly to the dispatcher and then anyone who would listen that her trainer routinely called her "his bitch" and told her she was on the truck to "clean up" after him, including the "Ziploc baggies" and bottles of his urine he left on the truck. During one argument, Simmons "tried to throw [her] off the truck in the middle of the highway." Simmons regularly sat in the truck cab in his underwear while Jones was driving, and rubbed the back of her head. Jones said she "want[ed] off this truck." CRST told her they would "see

95

what they could do," but she felt the dispatcher did not take her complaint "seriously." These allegations are not unlike those of Peggy Pratt, whose trainer stalked her at rest stops, hurled repeated gender-based insults and epithets at her, and screamed and cursed, XIII-Apx.3552-63, prompting one dispatcher, overhearing one such diatribe over the Qualcomm, to say he could not "believe [Pratt was] in the truck with this man." XIII-Apx.3553-55.

With respect to each of the allegations EEOC advanced below that specific women experienced harassment that was either severe or pervasive, EEOC offered record facts to support each allegation and legal precedent demonstrating that the conduct was at least arguably similar to conduct that has been found to be actionable by this Court or other courts. This Court has observed that "there is no bright line between sexual harassment and merely unpleasant conduct." *Hathaway*, 132 F.3d at 1221. That EEOC did not prevail on its contention that additional women, beyond the 69, also alleged actionable harassment under the unique

96

circumstances of CRST's "workplace" does not make EEOC's contentions on behalf of these women "frivolous" or "unreasonable."[21]

In any event, it was CRST's burden not merely to allege, but actually to demonstrate, in its fee application, that EEOC's position with respect to each of these women was frivolous, unreasonable, or without foundation. CRST's application for fees failed to do this. *See generally* R.386, R.394. Where EEOC sought individual relief for multiple women, CRST's broad sweeping contention that EEOC's entire claim was "frivolous" or "unreasonable" is inadequate to demonstrate entitlement to fees as a prevailing Title VII defendant.

Likewise, before imposing fees on the basis of any particular claimant, the district court was required to make specific findings that the EEOC's argument was "frivolous" with respect to that claimant.

---

[21] EEOC's first appeal sought to overturn the district court's summary judgment rulings with respect to approximately 40 women. EEOC did not appeal those rulings with respect to 47 other women identified as potential claimants during discovery. Nevertheless, all of those women had described forms of harassing conduct that EEOC believed violated Title VII. That EEOC was more selective in its first appeal does not make its initial identification of those women "frivolous" or "unreasonable."

97

The district court's decision is devoid of such findings. The court discussed no specific claimants in its universal "finding" that EEOC's claims were all without foundation. *See* A-317-320; *see also* A-300-304. Indeed, for many of these women, the court did not even discuss their individual allegations in its original summary judgment rulings, discussing, instead, only two or three women and then stating the others were similar, even though their complaints were not alike). *See, e.g.*, A-179.

The court erred in purporting to satisfy *Christiansburg* with such a broad brush. Had the district court undertaken the necessary examination of each claimant on whose behalf the EEOC sought relief, the court would have had to conclude that EEOC's contentions were not "frivolous, unreasonable, or without foundation."

### D. EEOC had a non-frivolous basis for arguing CRST was liable for the harassment of trainees and co-drivers.

EEOC's arguments that CRST was liable with respect to some of its claimants depended, in part, on EEOC's contention that CRST's trainers were "supervisors" of their trainees. This issue was relevant with respect to the district court's determination that some claimants did not experience

98

harassment that was sufficiently severe to be actionable; under some circumstances, harassing conduct is considered more serious when it is perpetrated by a supervisor than by a co-worker. *Faragher v. City of Boca Raton*, 524 U.S. 775, 803 (1998); *Ellerth*, 524 U.S. at 763. It is also relevant with respect to the district court's determination that EEOC could not seek relief for some of its claimants on the ground they did not notify CRST of the harassment while it was occurring. As explained below, under some circumstances of supervisor harassment, an employer may be liable even if the employee failed to provide notice of the harassment. *See Faragher*, 524 U.S. at 807-08.

Because EEOC's argument that CRST's trainers were supervisors was not frivolous, EEOC had a non-frivolous basis for arguing that CRST was liable for some instances of trainer harassment, even when claimants had waited until safely away from the harasser before notifying CRST. In any event, even under the standards governing employer liability for co-worker harassment, EEOC had a non-frivolous basis for arguing that CRST knew or should have known female drivers were regularly being harassed

99

and were likely to continue being harassed if CRST did not alter its anti-harassment practices and attempt to take more effective steps to prevent and to remedy driver harassment.

When the harasser is a co-worker, as this Court ultimately ruled is the case here, an employer is liable for a hostile work environment only if it knew or should have known of the harassment and failed to take appropriate steps to prevent or remedy it. *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). If the harasser is a supervisor, on the other hand, the employer is vicariously liable for a hostile work environment unless the employer proves (a) it took appropriate steps to prevent and remedy harassment and (b) the employee unreasonably failed to take advantage of the employer's complaint system. *Faragher*, 524 U.S. at 807 (establishing two-part affirmative defense).

This Court has held that to be considered a supervisor, "the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." *See, e.g.,*

100

*Merritt v. Albermarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007) (citation and internal quotations omitted).  Notably, the supervisory duties identified in this standard are illustrative rather than exhaustive.

Although CRST trainers did not have authority to hire, fire, or promote, the EEOC reasonably took the position, for a number of reasons including the total control they wielded over, and their power to take a variety of tangible actions against, trainees, that they were properly viewed as supervisors for purposes of determining CRST's liability for harassment. First, during EEOC's administrative investigation, HR Director Barnes referred to trainers as "essentially supervisors."  Second, CRST expressly instructed trainers they were the "captain of the ship" during the four-week over-the-road training assignments.  Third, the isolated nature of the 28-day over-the-road training enabled Lead Drivers to control virtually every aspect of a trainee's training experience.  Thus, trainers had authority to "reassign" trainees by denying them critical driving experiences needed in order to complete the 28-day training process.  Trainers also had the practical ability to control the elements of day-to-day living including

101

when or whether trainees ate, showered, or took bathroom breaks, and with whom they communicated during their 28-day over-the-road training. Fourth, although trainers did not have the authority to promote a trainee to a co-driver, they had substantial say over whether a trainee was promoted, which resulted in a substantial increase in pay. EEOC argued below that all of these factors, taken as a whole, distinguished this situation from the cases where this Court had found an absence of "supervisor" status because the individual lacked authority to hire, fire, etc.

The reasonableness of this legal position is supported by the fact that one member of this Court was persuaded by these considerations in EEOC's first appeal. *See CRST*, 679 F.3d at 697-98 (Murphy, C.J., dissenting) (disagreeing with majority that CRST's trainers are not supervisors of trainees). Moreover, the Supreme Court granted certiorari last year in another case to clarify this question, and the Court split sharply when it adopted a standard that generally aligns with the Eighth Circuit's view. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013); *see also id.* at 2459-60 (Ginsburg, J., dissenting) (listing *CRST* as one of several examples of

102

individuals excluded from the majority's test for "supervisor" despite dissent's belief that harassment by those individuals "should trigger vicarious employer liability").

EEOC reasonably believed that, if CRST's over-the-road trainers were considered "supervisors" of their trainees, CRST would be unable to establish either prong of the *Faragher/Ellerth* affirmative defense for supervisor harassment. EEOC reasonably believed CRST could not establish the first prong because CRST knew for several years that women complained about harassment at a rate of approximately one complaint per week, and yet the company did almost nothing in response to each complaint and made no changes to its anti-harassment policy or procedures.

EEOC reasonably believed CRST could not establish the second prong because trainees who delayed reporting harassment to their dispatcher or to HR had reasonable grounds for the delay. Some did not complain while the harassment was occurring because they feared the consequences if their trainer overheard them complaining while they were

103

still out on the road, or they knew their trainer and dispatcher were close and feared the dispatcher would tell their trainer. Others were prevented from complaining while the harassment was on-going because their trainer took their cell phone or phone charger away from them and failed to teach them how to use the Qualcomm (the communication system inside each truck). Still others had been rebuffed by their dispatcher during earlier complaints and were, therefore, deterred from complaining when harassment recurred.

Thus, the EEOC had reasonable bases for arguing that: CRST's trainers were supervisors of their trainees during the 28-day over-the-road training; CRST could not establish the *Faragher/Ellerth* affirmative defense; and, therefore, a jury could find CRST liable under Title VII for trainer harassment that was severe or pervasive, even if a woman delayed reporting the harassment until she was safely away from her harasser.

Even apart from the reasonableness of EEOC's argument that trainers were "supervisors," EEOC had a reasonable basis for believing that CRST could be found liable under Title VII because it was on notice that female

104

drivers were continuing to complain about sexual harassment by their trainers and, after they completed training, by their co-drivers, and its responses were ineffective to prevent or decrease the incidence of such harassment. CRST's own records reveal that for a three-and-a-half year period (January 2005 through October 15, 2008), CRST received harassment complaints from female drivers at an average rate of one per week. Review of CRST's own records reveals that even with respect to different harassers, women were complaining about many of the same forms of harassment. CRST, despite having notice of these recurring problems, made no changes to its anti-harassment policy or it responses to complaints.

Under those circumstances, EEOC reasonably took the position that CRST could be liable for co-worker harassment because it failed to take any different or additional steps in an effort to prevent future harassment by the same or different harassers. *See Sandoval v. Am. Bldg. Maintenance Indus.*, 578 F.3d 787 (8th Cir. 2009). As other courts have noted, an employer is responsible to take steps not only to prevent future conduct by an identified harasser, but also by other potential harassers. *See McGinest v.*

Appellate Case: 13-3159   Page: 116   Date Filed: 01/16/2014 Entry ID: 4114811

*GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004); *see also Erickson v. Wis. Dep't of Corrs.*, 469 F.3d 600, 606 (7th Cir. 2006) (employer must take "reasonable steps to prevent harassment once informed of a reasonable probability that it will occur").

In *Sandoval*, this Court held that an employer could be liable for particular incidents of which it had no actual knowledge, based on its awareness of nearly one hundred similar harassment complaints received during the same period, which this Court stated was "highly relevant" to prove the employer had constructive notice. *Id.* at 801-03. This Court reached this result, even though the harassment involved "different victims and different employees at [approximately 400] different locations." *Id.* at 804 (Gruender, J., dissenting). EEOC reasonably believed that, under a similar analysis, CRST could be liable for failing to take any different or additional preventive measures based on the frequent and on-going harassment complaints of its female drivers.

106

**E. The district court erred as a matter of law and abused its discretion in awarding CRST its fees on appeal.**

Finally, this Court should reverse the district court's imposition of $465,230.47 in fees CRST incurred for responding to EEOC's first appeal. R.400 at 36. The court failed to offer any explanation that could support such an award and such an extreme sanction is not warranted, in any event.

First, CRST should have filed its motion for appellate fees with this Court, not the district court. *See* 8th Cir. Local Rule 47C; *Little Rock Sch. Dist. v. Arkansas*, 127 F.3d 693, 696 (8th Cir. 1997). As this Court explained in *Little Rock*, "[t]he usual practice" in the Eighth Circuit in awarding fees under 42 U.S.C. § 1988 is for the court of appeals "to fix the compensation for services rendered before it" based on the policy rationale that "fee awards should be determined by the court most familiar with the legal services in question." *Id.* The plaintiffs in *Little Rock* were school districts seeking to enforce a school desegregation agreement, and this Court upheld their fee award, despite their deviation from the usual practice, rather than engage in what would otherwise have been a "mere procedural

107

contortion" of vacating the district court's award only to re-award the same fees itself. *Id.* at 694-95, 697. This Court did not, however, alter the basic rule that the preferred practice is for this Court to decide whether appellate fees should be awarded to a party who, like CRST, only partially prevailed on appeal before this Court. *See* 8th Cir. Local Rule 47C. And this Court had no occasion, in *Little Rock*, to discuss the standard for awarding fees to an allegedly prevailing defendant. *Id.*

Before awarding appellate fees to a prevailing Title VII defendant, a court must make the findings required under *Christiansburg* that the Title VII plaintiff's appeal was frivolous, unreasonable, or without foundation. *See Middleton v. Remington Arms Co.*, 594 F.2d 1210, 1213 (8th Cir. 1979) ("Although we have upheld the judgment of the District Court, we do not believe that [plaintiff's] contentions on appeal were so frivolous as to justify an award of attorney's fees to [defendant]).

The district court made no such finding here. Instead, the court stated only that it "rejects EEOC's arguments regarding CRST's appellate fees" and "has already found that CRST is the prevailing party and that the

108

*Christiansburg* standard is satisfied as to all of the claims that the EEOC appealed, other than the claim on behalf of Starke." R.400 at 33-36; *see also id.* at 36 (characterizing EEOC's claims as "unreasonable or groundless").

A district court cannot properly base the requisite findings to support appellate fees solely on its determination that a Title VII plaintiff's positions below were frivolous or unreasonable. *See Bugg v. Int'l Union of Allied Indus. Wkrs., Local 507*, 674 F.2d 595, 600 n.10 (7th Cir. 1982) (district court's determination that plaintiff's original action was frivolous or meritless "is neither necessary nor sufficient to support an appellate award"). This is particularly true where—as here—EEOC is also challenging the district court's determination that EEOC's positions below were unreasonable, *and* where EEOC's appeal required this Court to address important legal questions that were previously unresolved in this circuit, some of which were resolved by this Court in EEOC's favor and others of which resulted in a dissent.

The Sixth Circuit has explained, in rejecting a successful defendant's application for appellate fees because it did not meet the *Christiansburg*

109

standard: "To find the appeal unreasonable, we must conclude that *no reasonable person* would have thought he could succeed on appeal." *Wrenn v. Gould*, 808 F.2d 493, 505 (6th Cir. 1987) (emphasis added). Here, Judge Murphy concluded that EEOC should have prevailed on two significant issues: the sufficiency of EEOC's presuit procedures and the supervisor status of many of the alleged harassers in this case. For the district court to impose fees on EEOC as the losing appellant on issues where one member of this Court dissented on appeal is tantamount to a determination, by the district court, that Judge Murphy is unreasonable or, at least, that her dissenting opinion was "unreasonable." And if this Court were to affirm appellate fees it would be tantamount to this Court rendering the same determination. Although there may be examples where this has happened, the thoughtful and thorough analysis in Judge Murphy's dissent, *CRST*, 679 F.3d at 695-98, does not warrant such an outcome here.

The Sixth Circuit also explained that "to find the appeal unfounded, we must conclude that the appeal had no foundation in law upon which the appeal could be brought." *Wren*, 808 F.2d at 505. Such a finding could

not be made with respect to EEOC's first appeal in this case. The opening and reply briefs the EEOC filed with this Court cited extensive legal precedent for EEOC's legal arguments and applied that precedent to record facts as reflected in EEOC's twenty-volume appendix totaling 5,347 pages of documents. And, as a result, this Court ruled in EEOC's favor on one important issue (judicial estoppel) and issued a lengthy decision addressing the other issues EEOC raised on appeal (two of which, as noted above, resulted in a dissent).[22] Where EEOC's claims were "meritorious enough to receive careful attention and review," they "should not be considered groundless or without foundation for the purpose of awarding

---

[22] The district court did not characterize EEOC's appellate arguments as "frivolous," *see* A-329, and, for the reason stated above, such a characterization would be wholly unwarranted under these circumstances. As the Ninth Circuit has explained, "[a]n appeal is frivolous when the arguments are entirely without merit and when the result is obvious." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1449 (9th Cir. 1985) (rejecting defendant's request for appellate fees under Fed. R. App. P. 38 on ground that although it was obvious one of plaintiff's claims lacked merit, "resolution of his Title VII claim is not so clear"). The result was not obvious here, as evidenced (among other reasons) by the lengthy majority and dissenting opinions from this Court addressing EEOC's legal arguments and the portions of the record on which EEOC relied.

Appellate Case: 13-3159    Page: 122    Date Filed: 01/16/2014 Entry ID: 4114811

fees to" CRST as the prevailing defendant.  *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1559 (11th Cir. 1995) (citations omitted).

CRST, in seeking appellate fees, argued to the district court that the rulings of the district court and a divided panel of this Court that EEOC had failed to comply with Title VII before filing suit were "based upon longstanding precedents" that generally hold EEOC cannot sue until it has satisfied Title VII's presuit requirements.  *See* R.386-1 at 22.  This argument states a proposition so general as to be meaningless.  Although EEOC must satisfy presuit requirements, precisely what is required is a matter vigorously contested in this case, and *no* precedent foreshadowed the rule adopted by the district court and endorsed by this Court.  That EEOC lost on this issue cannot support an award of fees without doing violence to *Christiansburg*'s prohibition against hindsight reasoning.

To reiterate, neither this Court nor any district court in this circuit had ever addressed the specific question on which this Court ruled:  when EEOC seeks relief for a class of individuals for an employer's widespread violation of Title VII, does Title VII require EEOC to identify each potential

112

claimant during the administrative process and separately investigate her individual allegations before engaging the employer in conciliation efforts designed to address the allegations of widespread discrimination?  This Court had never so held, and every other circuit to address the question had held EEOC was not required to identify potential claimants or victims before seeking a judicial remedy for workplace discrimination.  CRST's attack does not come close to identifying the type of claim wholly lacking in legal or factual merit for which courts of appeal have awarded defendants appellate fees in a Title VII action.

## CONCLUSION

For all of the foregoing reasons, the judgment of the district court imposing attorneys' fees and costs on the EEOC should be reversed.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

CAROLYN L. WHEELER
Assistant General Counsel

113

s/ Susan R. Oxford
SUSAN R. OXFORD
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4791
susan.oxford@eeoc.gov

114

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 20,792 words, as permitted by this Court's order, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Palatino Linotype 14 point.

The pdf. version of this brief filed via the Court's ECF system has been scanned for viruses, and it is virus-free.

s/Susan R. Oxford
SUSAN R. OXFORD
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4791
susan.oxford@eeoc.gov

Dated: January 15, 2014

Appellate Case: 13-3159    Page: 126    Date Filed: 01/16/2014 Entry ID: 4114811

# CERTIFICATE OF SERVICE

I, Susan R. Oxford, hereby certify that on January 15, 2014, I filed the foregoing brief electronically with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the Court's CM/ECF system.  I further certify that the brief has been scanned for viruses and is virus-free.  I also certify that the following counsel of record, who have consented to electronic service, will be served the foregoing brief via the appellate CM/ECF system:

Counsel for Defendant/Appellee:
John H. Mathias, Jr.
James T. Malysiak
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654
(312) 222-9350

s/Susan R. Oxford
SUSAN R. OXFORD
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 663-479; susan.oxford@eeoc.gov